Lizzie **TASHNEK** et al., Appellants,

v.

**J. Weldon HEFNER et ux., Appellees.**

No. 12816.

Court of Civil Appeals of Texas.

Galveston.

July 14, 1955.

Rehearing Denied Oct. 6, 1955.

Berry, Richards & Baker, Ted Richards, Jr., De Lange, Hudspeth & Pitman, Albert J. De Lange, C. M. Hudspeth, and Eugene J. Pitman, Houston, for appellants.

Julia Mae Anderson, Houston, for appellees.

CODY, Justice.

This suit was one for rescission and cancellation of an alleged contract of sale of Lot 55 in Block No. 1 of Tasfield Subdivision No. 2, a subdivision in Harris County, Texas, according to an unrecorded plat of said subdivision, being out of 10 acres of land out of 210.4 acres of the Wiley Smith Survey on Hall's Bayou, a tributary of Green's Bayou, said contract being dated March 12, 1952, and being executed by Tasfield Investment Company, Inc., through its president, Mrs. Lizzie Tashnek, on the one hand, and J. W. Hefner and wife, Rose, described as Vendee, on the other.

The suit was brought by the said Hefners against the aforesaid Lizzie Tashnek and husband, Dave Tashnek, and against the Tashnek Realty Company and the Tasfield Investment Company, Inc., and in their suit plaintiffs additionally sought judgment for actual damages against defendants jointly and severally in the sum of $2,151 together with interest and costs; and additionally sought exemplary damages in the sum of $5,000; and additionally sought to have a lien affixed upon the property as the same was described in the above alleged contract of sale to secure the payment of the sums spent by plaintiffs in alleged good faith on the property as well as the amount of the purchase price paid by them; and plaintiffs additionally sought the foreclosure of the lien after the same had become affixed thereon.

The grounds upon which plaintiffs so sought rescission, so far as they are material, were (1) that the contract in question described the property according to an unrecorded map or plat and that this constituted a violation of Article 1137h, Penal Code, V.A.T.S., (2) that defendants fraudulently represented to plaintiffs that they had a good merchantable title to the property, (3) that defendants fraudulently represented that the improvements on the property were of good sturdy construction of first grade materials, and (4) that defendants, Lizzie Tashnek, or Dave Tashnek, fraudulently represented that the streets in said Addition were maintained by Harris County. Plaintiffs further alleged that each of the aforesaid misrepresentations were knowingly and designedly made with evil intent. And in such connection plaintiffs sought exemplary damages, as aforesaid. —Plaintiffs further sought to recover the amount by which the property had become enhanced in value by reason of the improvements placed thereon by plaintiffs in good faith.

At the conclusion of all of the evidence defendants moved for an instructed verdict, which the court overruled. The jury found that the defendants had made the fraudulent representations relied upon by plaintiff, and further made the subsidiary findings essential to support a judgment against defendants for rescission upon the aforesaid alleged fraudulent representation and the jury further found said representations were made under circumstances which would support a judgment for exemplary damages in the sum of $750, and the jury found that the property had become enhanced by improvements placed thereon by plaintiffs in the sum of $1,200; and the court rendered judgment for plaintiffs and against defendants, Lizzie Tashnek and Dave Tashnek and Tasfield Investment Company jointly and severally in the sum of $1,922.90 with interest thereon at the rate of 6% per annum from the date of judgment, and affixed a lien upon the property as the same was described in the contract dated March 12, 1952, etc. We deem it unnecessary to give a further account of the proceedings below.

Defendants, hereafter designated appellants, have predicated this appeal upon 20 formal points, which are too lengthy to be set forth. The first group of these points complains of the admission of evidence. The second group of points relates to damages. The third group of points relates to the title and the fourth group of points relates to fraud.

First of all, we think it proper to consider whether the contract of March 12, 1952, is a violation of Art. 1137h of the Penal Code. If the same did constitute a violation of said Article, appellees would be entitled to have the contract denounced as void, as a matter of law, and it would not be necessary in such case to determine whether or not there were equitable grounds present to justify a rescission or cancellation.

Section 1 of Art. 1137h, which was enacted in 1931, reads as follows: "No party shall file for record or have recorded in the official records in the County Clerk's office any map or plat of a subdivision or resubdivision of real estate without first securing approval therefor as may be provided by law, and no party so subdividing or resubdividing any real estate shall use the subdivision's or resubdivision's description in any deed of conveyance or contract of sale delivered to a purchaser unless and until the map and plat of such subdivision or resubdivision shall have been duly authorized as aforesaid and such map and plat thereof has actually been filed for record with the Clerk of the County Court of the county in which the real estate is situated."

Section 2 provides that a party violating the provisions of Section 1, is guilty of a misdemeanor and shall be fined or confined in jail or shall be both fined and imprisoned and that each act of violation shall constitute a separate offense.

We do not deem that the contract here involved does constitute a violation of aforesaid Article. It is noted that the prohibition is against a subdivider using a description "in any deed of conveyance or contract of sale delivered to a purchaser unless and until the map and plat of such

subdivision * * * has actually been filed for record with the Clerk of the County Court * * *." This is a Penal statute and before one could be convicted or be guilty of violation thereof, one would have to fall within the terms of the statute.

The contract of March 12, 1952, provides for monthly installment payments to be made beginning with April 12, 1952, and how these payments shall be applied. The contract further provides in the event of failure to make the payments so provided for that the vendor shall have the right to cancel the contract; and provides that all payments theretofore made by the vendee shall be forfeited to vendor as liquidated damages and rent and that the vendee shall thereafter have no further interest in the property. The contract further provides that it shall not be placed of record and failure to comply with such provision shall void the contract. The contract further expressly provides: "It is expressly understood that this agreement shall not be construed as a conveyance or sale of the property above described but shall be construed as a mere agreement to sell the property under the terms and conditions hereinabove set out and the relation created between the vendor and vendee shall be that of landlord and tenant until such time that the vendor delivers to vendee its warranty deed as herein stated." The contract further provides against assignment by the vendees except upon the written consent of the vendor.

Enough of the provisions of the contract have been given to identify the same as being an executory contract to convey and to show that the same is not a contract of sale and that it passed neither equitable nor legal title. See Currie v. Burgess, 132 Tex. 104, 120 S.W.2d 788. Thus, the contract in question, being merely an executory contract to convey and not a contract of sale and not purporting to pass either an equitable or legal title, it does not come within the terms of Article 1137h, which relates only to deeds and contracts of sale.

Appellees justify the rescission of the contract upon the ground that the de-

scription used therein was not adequate to locate the property in itself or by reference. If the description was thus inadequate it would be immaterial whether the contract was executory or purported to be a deed, but appellees seem to be in error as to the inadequacy of the description. Their contention that the evidence established as a matter of law that there was not any map of the addition appears to be in error. A Mr. Bongio, who testified that Mrs. Tashnek applied to his company for a loan, in effect stated that she told him there was no plat showing each individual lot as to the individual owners of the houses, which is very different from stating that there was no plat. Plats ordinarily only show the lots and blocks of property in an addition. Furthermore, appellees sought by their pleading to have a lien fixed upon the property in question and they did not describe the property otherwise than the same is described in the aforesaid contract. Appellees obtained a judgment affixing a lien upon said property and the property is described in exactly the same terms as the same is described in the contract, except that there are added the words "Known as 3725 Three Sisters Street". These added words could not have been considered as a variance since the appellees did not amend their petition to let in said additional descriptive words.

The court erred in allowing appellees to introduce evidence over appellants' objection in some half dozen instances with reference to the dispossession by appellants of vendees who were in default under other contracts. Linthicum v. Richardson, Tex. Civ.App., 245 S.W. 713; Reese v. Carey Brothers, Tex.Civ.App., 286 S.W. 307. The learned trial judge was mistaken in his opinion that appellants had opened the door to such evidence. What appellants had done was to prove by Mrs. Tashnek that the regulation under which she was operating authorized her to build for sale semi-finished houses, the sale price to be $2,500, with a down payment of $50. There is no contention that those who bought such houses did not know what they were getting and did not know that they would have to finish the inside of the house, install plumbing, etc.

Mrs. Tashnek, who appears not to have possessed a very comprehensive vocabulary, stated that the purpose served in making such sales was to enable poor people, who could not otherwise have done so, to become homeowners. Such explanation could not have given the jury any information which they did not necessarily have. The court permitted, over appellants' objection that such evidence was inflammatory and prejudicial, appellees to prove that appellants had, in various other instances where "poor" people had defaulted, dispossessed them, etc. The effect of this evidence could only have been to give the jury the impression that appellants, in pursuing their legal remedies, were engaging in predatory enterprises to victimize the poor.

■ Appellants presented evidence before the jury which, if it had been believed by the jury, would have constituted a defense to the charges of fraud. In other words, the evidence presented by appellees did not compel findings of fraud and appellees made no contention that the same did so and did not request any verdict to be directed in their favor. We have concluded that the error complained of requires the reversal of the judgment and a remand of the case for a new trial.—In view of another trial, we think we should rule on certain other of the points urged by appellants.

It is unnecessary to pass upon whether or not the court erred in not permitting Mr. Gerald S. Gordon of the Houston Bar to testify as to the purpose of incorporating the Tasfield Investment Company with the capital sum of $100.00. The reason given by the court for not permitting such testimony was that the witnesses had been placed under the Rule and Mr. Gordon had come into the court room. This is not likely to occur again.

■ The court erred in admitting the testimony of the witness Bongio, who testified that he had declined to approve a loan on the property in question because there

was no recorded plat. It is not contended that Mr. Bongio is an expert on legal titles and the court is himself competent under the facts to pass upon whether the title to the property in question was a good and merchantable one.

█ The court did not err in submitting to the jury special issues inquiring whether (1) appellants represented to appellees that they had a good and merchantable title to the property, and (2) whether appellants represented that the improvements upon the property in question were of good and sturdy construction of first grade materials, and (3) whether appellants represented that the streets in the Addition were maintained by Harris County.—It is the settled law of Texas that there can be no judicial relief from a contract induced by fraudulent misrepresentation unless a pecuniary loss is proved. Russell v. Industrial Transp. Co., 113 Tex. 441, 258 S.W. 462. However " 'in the case of executory contracts, the rule does not mean that the party complaining should have sustained actual loss at the moment of rescinding or filing his bill for rescission, but it is enough to show that such will be the inevitable result if the contract is completed according to its terms.' " Id., 258 S.W. 463.

█ There was clearly evidence to authorize the submission of said special issues and we consider that if the issues were found, as they were so found, adversely to appellees, the inevitable result would be that appellees would suffer loss. This is peculiarly true with respect to the representations inquired about in special issues referred to and designated above as (2) and (3), and we are strongly of the opinion that appellees were not bound to continue to make their payments provided for in the contract for a period of eight years upon the hope and trust that appellants would obtain a release from an outstanding deed of trust in the sum of $25,000 after appellees had represented that they held a merchantable title. So far as the evidence shows appellants could depend only on the good nature of the lienholder to execute a release by paying off the entire $25,000.

It is not contended that there were any partial release provisions contained in the deed of trust.

Here the court awarded appellees the amount of the value by which the property in question was enhanced in virtue of improvements made in good faith by appellees, as found by the jury. It is quite clear that appellants should not be made to pay, by way of damages, in case of rescission by reason of improvements made by the appellees, a greater amount than the enhanced value of the property by reason of said improvements. On the other hand, appellees are at most entitled only to be made whole by reason of having placed the improvements on the premises in good faith.

█ So, to remove all question, special issues should be submitted to the jury so that in case of adverse findings to appellants, the appellees could obtain judgment for their actual damages by reason of good faith improvements in the amount of the enhanced value or the cost of the improvements to appellees, whichever is less.

█ It is not the law, in our opinion, that in case of rescission of contract for fraudulent representation authorizing a rescission, that exemplary damages as well as actual damages may not be recovered. See Briggs v. Rodriguez, Tex.Civ.App., 236 S.W.2d 510, 516. Here the representations relied upon by appellees were made intentionally and made to induce appellees to act thereon and the jury was entitled to believe under appellees' evidence that such representations were known by appellants to be false when made. Under the case last cited the court, relying upon Oliver v. Chapman, 15 Tex. 400, held that the recovery of the consideration paid as a result of fraud constitutes actual damages and will serve as a basis for the recovery of exemplary damages.

It is not clear that the court did not in fact allow appellants credit for the rental value of the property while the same was occupied by appellees. But upon another trial there should be no room left for doubt or any resort to the principle of supporting

the judgment by presumption. We believe that the evidence which appellants tendered to establish that they could obtain a release from the $25,000 lien was no more than opinion evidence and was at best mere hearsay. It is not contended that there were any provisions in the lien for partial releases.

We have considered appellants' other points and hold that they should be overruled.

The judgment of the court must be reversed and the cause remanded for the reasons set forth above.

Judgment reversed and cause remanded.