**VILLAGE MOBILE HOMES, INC., Appellant,**

v.

**Terry A. PORTER, Appellee.**

No. 14451.

Court of Appeals of Texas, Austin.

June 25, 1986.

Rehearing Denied Sept. 24, 1986.

Kent M. Rider, Joseph & Rider, Austin, for appellant.

Charles O. Grigson, Austin, for appellee.

Before POWERS, EARL W. SMITH and BRADY, JJ.

BRADY, Justice.

Appellant, Village Mobile Homes, Inc., appeals from an adverse judgment rendered by the district court of Travis County. Appellee, Terry A. Porter, sued appellant alleging, among other things, that it had violated the Deceptive Trade Practices—Consumer Protection Act (DTPA or Act). Tex.Bus. & Com.Code Ann. § 17.41 *et seq.* (Supp.1986). The cause was tried before a jury which returned findings favorable to appellee. Based upon the jury's findings, the district court rendered judgment for appellee. We will reverse and render judgment in part, modify the judgment and, as modified, affirm it in all other respects.

Appellee, while serving in the United States Air Force, was assigned to a unit at Bergstrom Air Force Base. Being newly assigned and a single parent, appellee required housing off base. Because she wished to make a permanent investment, appellee determined that she would buy rather than rent a dwelling. Appellee then began searching for a mobile home to purchase.

During her search, appellee approached appellant's representative, Douglas Darwin, who showed her several models. At this time, appellee agreed to purchase a Flamingo Redman from appellant for $21,-

739.10. Appellee paid $1,000.00 as a down payment for this particular mobile home. Shortly after the parties had entered into this agreement, Darwin contacted appellee and informed her that appellant had a used home for sale which could be occupied immediately.

The mobile home Darwin described was a Fuqua Challenger. Being a used home, it sold for slightly less than the other model and had the added advantage of being larger. Of particular importance to appellee was the fact that the home was already located in a mobile home park.

On February 11, 1981, appellee agreed to purchase the used home from appellant for $19,000. The parties entered into a retail installment sales contract which obligated appellee to pay appellant $294.27 a month for a period of 12 years. In addition, appellee was required to pay $764 in sales tax, and $75 in title and licensing fees.

### THE DISPUTE

Appellant allegedly represented to appellee that the home was in good condition, that all its appliances were in good working order and that the exterior of the home had recently been painted. Shortly after taking up residence at the home, however, appellee found it necessary to make certain repairs in order to make the home habitable. She noticed that the paint on the exterior of the home had cracked and peeled, leaving the home's exterior unprotected. To preserve the home and her investment, appellee was required to paint the home's exterior. Rather than pay a professional, appellee chose to do the job herself.

Appellee found that several of the home's appliances were either missing or in disrepair. For instance, the oven did not operate properly, forcing her to replace both the stove and oven. As hot weather approached, appellee found that the home's air conditioner had a malfunctioning air compressor. She replaced this item at her own expense in order to live comfortably during the summer months. Various light fixtures as well as certain curtain rods were missing, requiring replacements.

Contrary to appellant's alleged representation that it was the only lienholder, appellee discovered that Kensington Mortgage Finance Corporation also possessed a lien against the home. Title to the home had never been transferred to appellee; the only owner of record was Oliver Basey who had purchased the home originally. Further, the sales tax and fees appellee was required to pay when she entered into the contract to purchase had never been sent to Travis County and the State of Texas.

Upon discovery of these matters, appellee turned to the Attorney General's office for help. With Mr. Ed Salazar of that office aiding her, appellee attempted to resolve the differences between herself and appellant. Appellant in turn made two offers to settle the dispute, but neither were satisfactory to appellee.

At some point after these negotiations began, appellee received orders transferring her to an Air Force base in Arizona. It was then that appellee decided to rescind the contract to purchase the mobile home. By this time, appellee had retained private counsel who notified appellant of appellee's decision to rescind and continued with the settlement negotiations. Again appellee found appellant's settlement offers unsatisfactory. When it appeared to appellee that negotiations had reached an impasse, she notified appellant that she was rescinding the contract and abandoning the home. Thereafter, she filed this lawsuit alleging, among other things, common law fraud and a suit for revocation of acceptance.

### APPELLEE'S CAUSES OF ACTION

By way of trial amendment appellee alleged a DTPA cause of action. § 17.41 *et seq., supra.* Appellee asserted at trial that appellant, by representing that it was the only lienholder, had induced her to buy a home she would not have bought otherwise. By such conduct, she argued, appellant represented the agreement to purchase conferred rights or remedies it did not truly have, violating Tex.Bus. & Com. Code Ann. § 17.46(b)(12) (Supp.1986).

By her pleadings, appellee also alleged a cause of action under the Texas Consumer Credit Code, Tex.Rev.Civ.Stat.Ann. art. 5069–1.01, *et. seq.* (Supp.1986). More specifically appellee alleged that appellant, by omitting to tell her that Kensington Mortgage possessed a first lien against the mobile home, had violated art. 5069–6A.05(2)[1], which requires that all creditors to a transaction be clearly identified.

Finally, appellee prayed for a revocation of her acceptance under the contract, due to the title defects she had discovered since the purchase.

At trial, the jury found that appellant had, indeed, made representations regarding the agreement which conferred rights which the agreement did not have. In addition, the jury found such representations to have been made knowingly. The jury concluded as well that appellant had violated art. 5069–6A.05(2). Based substantially on the jury's findings the trial court rendered judgment in favor of appellee, awarding her $8,143.57 in actual damages on her DTPA claim; $4,500 in punitive and treble damages under the DTPA; $4,000 under the Texas Consumer Credit Code; and $12,056 in attorney's fees. The trial court also allowed appellant an offset in the amount of $3,600 for the rental value of the mobile home.

## POINTS OF ERROR DEALING WITH DTPA CLAIM

Appellant brings four points of error concerning appellee's DTPA cause of action. By its first point, appellant complains that appellee failed to comply with Tex.Bus. & Com.Code Ann. § 17.50A(a) (Supp.1986).

■ Section 17.50A(a) provides:

§ 17.50A. Notice Offer of Settlement.

(a) As a prerequisite to filing a suit seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter against any person, *a consumer shall give written notice to the person at least 30 days before filing the suit advising the person of the consum-*

*er's specific complaint and the amount of actual damages and expenses, including attorney's fees, if any reasonably incurred by the consumer in asserting the claim against the defendant....* (Emphasis added)

The apparent purpose of § 17.50A(a) is to encourage the settlement of disputes between sellers of goods and services and their consumers. *Barnard v. Mecom,* 650 S.W.2d 123 (Tex.App.1983, writ ref'd n.r.e.). This section then, gives the seller an opportunity to make right that which is wrong, before the consumer initiates court proceedings. *Chrysler Corporation v. Roberson,* 619 S.W.2d 451 (Tex.Civ.App.1981, no writ).

■ Appellee, by a letter dated July 2, 1982, has complied with § 17.50A(a). This letter is addressed to appellant's counsel and itemizes the damages necessary to compensate appellee, including attorney's fees. Appellee in this letter, goes even further, by warning appellant that she will file a DTPA cause of action should it refuse her offer to settle. Appellee is not required, under this section, to disclose the theory of her cause of action; nor is she required to advise appellant of the particular sections she believes it has violated. *Jim Walter Homes v. Valencia,* 679 S.W.2d 29 (Tex.App.1984), aff'd, 690 S.W.2d 239 (Tex.1985). Appellant's point is overruled.

Appellant filed with the trial court, its last settlement offer to appellee, as well as the affidavit of Donald Dempsey, its president attesting to the fact that this offer was rejected by her. Appellant next contends that, as a matter of law, it had established the defense of tender under § 17.50A(d). We disagree.

■ Section 17.50A(d) provides:

(d) A settlement offer made in compliance with Subsection (c) of this section, if rejected by the consumer, may be filed with the court together with an affidavit certifying its rejection. If the court finds that the amount tendered in the

1. Former art. 5069–6A.04, 1979 Tex.Gen.Laws, ch. 672, § 4 at 1576.

settlement offer is the same or substantially the same as the actual damages found by the trier of fact, the consumer may not recover an amount in excess of the amount tendered in the settlement offer or the amount of actual damages found by the trier of fact, whichever is less.

This section presents to the trial court a question of law as to whether the amount tendered to the plaintiff in settlement is "the same or substantially the same" as the amount of actual damages found by the trier of fact. § 17.50A(d), *supra.* The question before us is whether or not the trial court in this particular case correctly decided this question.

■ Appellant's final offer to appellee was $2,500. The actual damages found by the trier of fact was $8,143.57. Appellant's offer of $2,500 is far from being "the same or substantially the same" as the actual damages awarded appellee. Assuming, arguendo, that the $3,600 awarded appellant for the rental value of the mobile home should be subtracted from the actual damages found by the jury, a sum of $4,543.57 still remains. This sum likewise is not "the same or substantially the same" as appellant's last offer. The trial court, by refusing to limit appellee to the $2,500 last offered by appellant, correctly answered the question of law presented by § 17.-50A(d). Appellant's point of error is overruled.

■ While not clearly presented, appellant by its third point of error attempts to argue that there was either no evidence or insufficient evidence to show that its violations of the DTPA were committed knowingly. We disagree.

Section 17.50(b)(1) provides:

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of actual damages found by the trier of fact. In addition the court shall award two times that portion of the actual damages that does not exceed $1,000. *If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of*

*fact may award not more than three times the amount of actual damages in excess of $1,000;* (Emphasis added).

Under this section, a consumer seeking to treble the amount of actual damages must demonstrate that the conduct constituting the basis of his complaint was committed knowingly. To this end, § 17.45(9) defines "knowingly" as:

. . . actual awareness of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim or, in an action brought under Subdivision (2) of Subsection (a) of Section 17.50, actual awareness of the act or practice constituting the breach of warranty, but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

Appellant's contention that there is no evidence to support findings that it knowingly violated the Act poses a question of law and requires that we "consider only that evidence most favorable to" the findings challenged by appellant. *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1951). By contrast, appellant's contention that there is insufficient evidence to support such findings requires that we consider and weigh all the evidence related to this issue in order to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 S.W.2d 660, 244 S.W.2d 660 (1951).

The findings specifically challenged by appellant are listed in question no. 11 of the court's charge.

QUESTION NO. 11

Do you find from a preponderance of the evidence that such conduct found by you and listed below was committed knowingly?

| Conduct | Knowingly |
| --- | --- |
| 1. Representations of rights, remedies or obligations | (Yes) or No |
| 2. Causing confusing or misunderstanding as to source, sponsorship, approval or certification | (Yes) or No |

3. Failure to disclose        (Yes) or No
4. Defendant only lienholder   (Yes) or No
5. Failure to perform necessary acts to show Plaintiff as owner   (Yes) or No
6. Failure to pay taxes and fees   (Yes) or No

The first four findings under this question can be reduced to one issue; that is, whether appellant knew that Kensington Mortgage already possessed a lien against the mobile home at the time of the sale. If there is sufficient evidence supporting an affirmative answer to this question, the specific conduct found by the jury to have been committed knowingly must be affirmed. *In re King's Estate, supra.*

The deposition testimony of Donald Dempsey, appellant's president, indicates that the home in question was not to be sold on a retail installment contract, but on a wrap-around mortgage, which, according to him, would have solved any problem regarding Kensington Mortgage. Dempsey further testified that he was the only person employed by appellant who was aware of this fact and that he was not present at the time of the sale. However, Dempsey also testified that he had placed the mobile home on a price sheet and left instructions with appellant's employees as to how this particular home was to be sold. In addition, when asked if he were the only one who knew how the home was to be sold, Dempsey replied that he had thought some employees knew, but *apparently* did not because they did not sell it that way. Furthermore, Dempsey never stated that appellant's employees were unaware that Kensington Mortgage possessed a lien against the home, only that they did not sell it the way he would have liked.

We conclude that there is sufficient evidence to support a finding that appellant was aware that Kensington Mortgage held a lien against the home at the time of the sale. This being the case, the evidence is likewise sufficient to support the jury's findings as to knowing violations of the DTPA. If we disregard all of the negative evidence regarding the issue of knowledge, it follows that there is some evidence to support the jury's findings as well. Appellant's no-evidence and insufficient evidence points of error are overruled.

Appellant does not question, or at least has not sufficiently argued, that there is no evidence or insufficient evidence to support the last two findings concerning transfer of title and nonpayment of taxes and fees. We, therefore, do not address them.

■ Appellant, by its next point of error, disputes the validity of certain damages found by the jury. The specific findings contested by appellant are contained in question no. 11A which is set forth below.

QUESTION NO. 11A

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiff for her actual damages?

Consider the following elements of damage and none other.

1. Plaintiff's monthly payments      $5,002.59
2. Plaintiff's down payment       $1,506.00
3. Amounts Plaintiff spent for improvements       $ 984.98
4. Time spent by Plaintiff on improvements       $ 250.00
5. Time spent by Plaintiff to solve the mobile home title problem   $ 400.00
6. The increased market value of the mobile home from February 11, 1981, to August, 1982, in Travis County, Texas   $1,000.00

It is appellant's contention that the time expended by appellee in making improvements to the home (finding no. 4) and in conducting a title search (finding no. 5) is not compensable, claiming that "it is simply not a loss sustained by her."

We first address those damages pertaining to appellee's title search. Appellee, upon discovering the discrepancy in title, attempted to conduct a title search on the mobile home. This title search was the foundation for the $400 in compensation found by the jury in finding no. 5. It was undisputed that appellee spent a considerable amount of time conducting her title search. It is likewise undisputed that her

time is worth approximately $5.00 an hour. Notwithstanding the fact that appellee expended a great deal of time trying to correct the discrepancy in title, appellant argues that she lost no wages or benefits doing so and should, therefore, receive no compensation for her efforts. We disagree.

■ We begin with the precept expressed in *Woo v. Great Southwestern Acceptance Corporation,* 565 S.W.2d 290, 298 (Tex.Civ.App.1978, writ ref'd n.r.e.), that under the DTPA an aggrieved consumer may recover the greatest amount of actual damages he has alleged and proved to be the result of a seller's wrongful conduct. Such damages would include reasonable and necessary expenses related to or resulting from a violation of the Act. *Hyder-Ingram Chevrolet, Inc. v. Kutach,* 612 S.W.2d 687, 689 (Tex.Civ.App.1981, no writ).

In the instant appeal, appellee expended time in conducting a title search. Had the fact that Kensington Mortgage held a first lien against the home been disclosed to her at the time of the sale, she presumedly would not have made this title search. Thus, the $400 in damages found by the jury in finding no. 5 is a direct result of appellant's failure to disclose. We hold that the damages complained of are compensable. Such damages do not expand those recoverable at common law because they may be viewed simply as consequential damages. Accordingly, appellant's point of error as it pertains to finding no. 5 is overruled.

Appellant complains, as well, of those damages found by the jury regarding appellee's time in making improvements to the home. Before we can address the specific issue raised by appellant, however, we must first resolve an issue pertaining to damages for improvements generally.

Shortly after occupying the mobile home, appellee repainted the exterior and replaced certain items in the home such as curtains and faucet fixtures. The jury found that the time spent by appellee in performing these improvements had a value of $250 (finding no. 4). The jury also found $984.98 (finding no. 3) to be the cost of purchasing the paint and other material used to make the improvements. These two findings taken together may be viewed simply as the total cost of improvements to the mobile home and totals $1,234.98. In addition, the jury found the enhanced value of the mobile home to be $1,000 (finding no. 6). Before judgment was rendered, however, finding no. 6 was disregarded by the trial court because appellee had in effect been compensated twice for improvements made to the home.

■ A plaintiff may recover the value of good faith improvements to property, provided this is alleged and proved. *Tashnek v. Hefner,* 282 S.W.2d 298, 303 (Tex.Civ.App.1955, writ ref'd n.r.e.). The value of improvements is measured by either the expense to the plaintiff of making these improvements or the enhanced value of the property. *Tashnek v. Hefner, supra.* The plaintiff, however, is confined to the lesser of these two values and under no circumstances may he recover both. *Tashneck v. Hefner, supra.*

■ In this cause, the lesser of the two values referred to above was $1,000. This amount was measured by the enhanced value of the home and is the amount appellee should have recovered as compensation for good faith improvements. The trial court incorrectly awarded appellee $1,234.98, which was the greater of the two values and measured by the cost of making these improvements. Thus, findings no. 3 and 4 should have been disregarded and the $1,000 in finding no. 6, should have been awarded appellee. Having reached this decision we conclude that appellant's point of error regarding the time appellee expended in making improvements is no longer an issue and we do not address it.

**TEXAS CONSUMER CREDIT CODE**

■ As previously stated, appellee sued appellant under the Texas Consumer Credit Code, art. 5069–1.01, *et seq.,* for its failure to disclose Kensington Mortgage as a cred-

itor. Appellee's cause of action is derived from art. 5069–6A.05(2), which provides:

> If there is more than one creditor in a transaction, each creditor whose identity is known at the time of the credit extension shall be clearly identified.

Appellant contends that Kensington Mortgage was not a creditor as to appellee at the time of the sale and, therefore, not a party which it was required to disclose. We agree.

Obviously, in order for appellant to have violated art. 5069–6A.05(2), Kensington Mortgage must first qualify as a "creditor." The statutory definition of the term "creditor" applicable to this cause provides:

> Creditor means *a person who in the ordinary course of business regularly sells manufactured homes or extends or arranges for the extension of credit for the purchase of a manufactured home for the use by the customer,* which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required. The term includes both the seller and, if known at the time of credit extension, the financer of the credit sale, even if the financer does not regularly extend credit as described above. (Emphasis added)

1979 Tex.Gen.Laws, ch. 672, § 2, at 1577. To qualify as a "creditor" under this definition, a party must either be in the business of selling mobile homes or must extend or arrange for the extension of credit, to a particular customer for the purchase of a mobile home.

The parties do not dispute the fact that Kensington Mortgage did not, in the ordinary course of business, regularly sell mobile homes. It is likewise undisputed that Kensington Mortgage did not extend credit to appellee so that she could purchase the mobile home in dispute. Thus, Kensington Mortgage, under this definition, does not qualify as a "creditor," [2] and it was not a party which appellant was obliged to dis-

close to appellee under art. 5069–6A.05(2). Appellant's point of error is sustained.

## REVOCATION OF ACCEPTANCE

█ It is appellant's contention that appellee was not entitled to revoke her acceptance of the mobile home because prior to revocation she had materially altered or changed its condition. This being the case, appellant argues, there was no evidence or insufficient evidence to support the jury's findings regarding revocation of acceptance. We disagree.

A buyer's right to revoke the acceptance of a good or goods delivered under a contract is derived from Tex.Bus. & Com.Code Ann. § 2.608 (1968), which provides:

> § 2.608. **Revocation of Acceptance in Whole or in Part**
>
> (a) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
>
> (1) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
>
> (2) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
>
> (b) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it *and before any substantial change in condition of the goods which is not caused by their own defects.* It is not effective until the buyer notifies the seller of it. (Emphasis added)
>
> (c) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Appellant's argument refers to that portion of § 2.608(b) which states that the revocation of acceptance must occur "before any substantial change in condition of the

**2.** The statutory definition of "creditor" has since been amended to include Kensington Mortgage as a creditor. That definition, however, is not applicable to this cause. 1981 Tex.Gen.Laws, ch. 496, § 2(2)(c), at 2127.

goods which is not caused by their own defects." With regard to this section we would refer appellant to comment 6 of § 2.608 which states that "the buyer may not revoke his acceptance if the goods have *materially deteriorated except by reason of their own defects.*" The provision of § 2.608(b) which appellant refers to was intended to protect the seller from changes which deteriorate or take away from the value of the goods sold. § 2.608(b), comment 6, *supra.* As stated previously, the jury found that the improvements made by appellee to the mobile home increased its value by $1,000. The fallacy in appellant's argument is apparent, when one considers that had appellee not painted the exterior of the home, but instead let it deteriorate, she would not have been prevented from revoking her acceptance under § 2.608 because any damages sustained by the home would, of course, have been caused by defects in the home itself. Appellant's point of error is overruled.

### ATTORNEY'S FEES

Under its final point of error, appellant claims that appellee was not entitled to attorney's fees, because of her attorney's inability to separate the time expended on causes of action in which attorney's fees are recoverable from those in which attorney's fees are not recoverable. We disagree.

Appellee, as stated previously, alleged several causes of action when this suit was first filed. In addition to alleging DTPA and credit code violations, appellee alleged a breach of contract and common law fraud. Appellee's counsel, when cross-examined about the time spent on preparing this suit for trial, testified that he could not separate the time spent on common law forms of action from the time expended on statutory forms of action.

Generally, attorney's fees are not recoverable unless provided for by statute or by a contract entered into by the disputing parties. *Bray v. Curtis,* 544 S.W.2d 816 (Tex.Civ.App.1976, writ ref'd n.r.e.). It is also true, that when a suit involves more than one cause of action, and among these is a cause of action in which attorney's fees are recoverable, the party suing for such fees must present specific evidence indicating the amount of time he spent on that particular cause of action. *Bray v. Curtis, supra.* There is, however, an exception to this general rule, which occurs when the causes of action involved in a suit are dependent upon the same set of facts or circumstances for their existence. *DeLaFuente v. Home Savings Association,* 669 S.W.2d 137 (Tex.App.1984, no writ). It would appear, that when the causes of action to a suit are intertwined to the point of being inseparable the party suing for attorney's fees may recover these fees even though under one or more of the causes of action attorney's fees are not recoverable. *DeLaFuente v. Home Savings Association, supra.*

At trial, appellee's counsel testified that he could not break the fee down into its component parts; that is, he could not say how much time he spent on each particular cause of action because they all arose from the same set of facts. Inasmuch as each cause of action was based essentially on appellant's failure to disclose Kensington Mortgage as a lienholder, we hold that the causes of action involved in this suit are inseparable, requiring proof of the same facts. The trial court, therefore, correctly awarded appellee attorney's fees in this cause. Appellant's final point of error is overruled.

The part of the trial court's judgment awarding appellee $4,000 under the Texas Consumer Credit Code is reversed and judgment is hereby rendered that appellee take nothing by this cause of action. That part of the judgment awarding appellee $1,234.98, as found by the jury in special issue 11A parts 3 and 4, is reversed and judgment is here rendered that appellee take nothing in that respect; the judgment is modified to order recovery by appellee of $1,000 for the enhanced value of the mobile home as found by the jury in special issue no. 11A part 6; in all other respects, the judgment is affirmed.