TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00813-CV






Appellants, Dr. Phillip Osborne and Deborah Osborne //

Cross-Appellant, State Farm Lloyds


v.


Appellee, Jauregui, Inc. // Cross-Appellees, Dr. Phillip Osborne and Deborah Osborne






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. 99-08727, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING





O P I N I O N



 This appeal arises from a dispute between appellants and cross-appellees Dr. Phillip
Osborne and Deborah Osborne and appellee Jauregui, Inc. Jauregui was the architect and builder
of the Osbornes' house, which turned out to contain numerous defects that eventually led to mold
contamination, among other problems. State Farm provided the Osbornes' homeowners' insurance. 
After mold was discovered in the house, the Osbornes brought suit against Jauregui and various
subcontractors, seeking damages in excess of $2,000,000. State Farm intervened, asserting a
subrogation claim for the amount it paid the Osbornes under their homeowners' policy. All parties
other than Jauregui settled prior to trial for a total settlement amount of $1,260,500. After the jury
returned a verdict finding that the Osbornes had suffered approximately $835,000 in damages, the
trial court applied a settlement credit in Jauregui's favor and entered judgment that the Osbornes
should take nothing on their claims. The trial court declined to award the Osbornes attorney's fees
and further declined to grant State Farm any of the proceeds from the Osbornes' settlement with the
subcontractors under its subrogation claim. The Osbornes and State Farm both appealed. We
reverse the denial of the Osbornes' request for attorney's fees and the denial of State Farm's
subrogation claim. We remand to the trial court for a calculation of attorney's fees and a
reconsideration of State Farm's claim for subrogation rights against the settlement proceeds.


BACKGROUND

 In 1997, the Osbornes bought a house from Jauregui for slightly more than $1 million. 
Shortly after moving in, the Osbornes noticed flaws in the construction. They later learned that the
house had serious mold problems due to various construction errors. The Osbornes also noticed that
because the house was built along a golf course, golf balls frequently hit and damaged the house,
although Jauregui and its realtor had assured them there would be no "golf ball problem." (1) Prior to
filing suit, the Osbornes provided Jauregui with a demand letter, offering to settle for the amount of
$866,000, but Jauregui refused, responding with a counter-offer of $12,810. (2) In July 1998, the
Osbornes sued Jauregui and its owner, Jose Luis Jauregui, asserting causes of action under the Texas
Deceptive Trade Practices Act (DTPA) and for breach of contract, negligence, breach of warranty,
real-estate fraud, and negligent misrepresentation. The Osbornes also sued a number of
subcontractors and suppliers of construction materials, alleging negligence, breach of warranty,
DTPA violations, and products liability. (3) In March 2003, State Farm intervened as the Osbornes'
subrogee. Shortly before trial, the Osbornes settled with all the defendants except Jauregui and its
owner. The settling defendants paid a total of $1,260,500--$1,120,500 of which remains after the
payment of expert-witness fees. The Osbornes, who put on evidence at trial that they suffered a
minimum of $2,418,153 in damages, excluding damages for mental anguish, bodily injury, and
attorney's fees, went to trial to pursue its claims against Jauregui and its owner, the
remaining defendants.

 The jury found that Jauregui was negligent and breached warranties made to the
Osbornes. The jury found that the Osbornes suffered damages totaling $835,158.78: $250,000 for
repairs necessary to bring the house to the condition reasonably expected when they bought it;
$220,000 for lost or damaged clothing and non-furniture personal effects; $70,000 for non-clothing
items that were condemned due to mold contamination; $28,000 for repairs actually made by the
Osbornes; $1,000 for damaged furniture; $95,158.78 for alternate living expenses; and $171,000 for
moving, storage, and cleaning of their belongings. (4) The jury found that Jauregui was responsible for
48% of the Osbornes' damages and that the subcontractors and suppliers were responsible for the
remaining 52%. The jury determined that Jauregui did not engage in unconscionable conduct,
deceptive practices, fraud, or negligent misrepresentation. The jury did not find Jauregui's
individual owner responsible for any of the Osbornes' damages.

 Jauregui elected a dollar-for-dollar credit of the settlement funds against the damages
awarded by the jury, and after applying that credit to the jury award, the trial court entered a
judgment that the Osbornes should take nothing against Jauregui and refused to award attorney's fees
against Jauregui. The trial court also denied State Farm's claim that it was entitled to any settlement
funds through subrogation. The court made findings of fact and conclusions of law in which it found
that there was evidence that the Osbornes had incurred $1,149,641.30 in attorney's fees, (5) but
concluded that they were not entitled to attorney's fees because they did not obtain a net recovery
from Jauregui and because they did not segregate the fees among the various claims and parties. 
Finally, the court found that because State Farm did not pay for any of the Osbornes' attorney's fees,
the fees were "an uncompensated expense of collection," and that State Farm did not meet its burden
to present evidence showing what portions of the settlement credits were "allocated to the items State
Farm paid for . . . as opposed to other items of damage and expenses of collection alleged by [the
Osbornes] in their petitions that State Farm had not paid for, such as mental anguish, bodily injury,
repairs and attorney's fees." The court concluded that State Farm was not entitled to the settlement
proceeds because it had not shown that the proceeds were payments for losses it had covered.

 On appeal, the Osbornes argue that they were "prevailing parties" under the DTPA
and were not required to segregate their attorney's fees. In its cross-appeal against the Osbornes,
State Farm argues that the trial court abused its discretion in denying State Farm's subrogation claim
because that denial grants the Osbornes a double recovery. State Farm also argues that any money
received from Jauregui would be subject to State Farm's subrogation rights and that the trial court
properly denied the Osbornes' request for attorney's fees.


STANDARD OF REVIEW

 The availability of attorney's fees under a particular statute is a question of law to be
reviewed de novo. Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 94 (Tex. 1999); see
Johnson v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex. 1989) ("Matters of statutory construction
are questions of law for the court to decide."). The extent to which attorney's fees can or cannot be
segregated is a mixed question of law and fact. Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d
299, 313 (Tex. 2006). Where segregation of fees is possible, remand is required. Id. at 314.

 In the absence of an unambiguous contractual provision regarding subrogation, the
right to subrogation is grounded in equitable principles, and "[a] trial court's balancing of the
equities should not be disturbed on appeal unless a showing is made that it would be inequitable to
allow the judgment to stand." Esparza v. Scott & White Health Plan, 909 S.W.2d 548, 552
(Tex. App.--Austin 1995, writ denied).


DISCUSSION

Attorney's Fees

 The trial court determined that the Osbornes were not eligible to recover attorney's
fees because they were not "prevailing parties" under the DTPA. The trial court also found that the
Osbornes could not recover attorney's fees because they had not segregated their attorney's fees
among the various claims and defendants. The Osbornes argue on appeal that they should recover
attorney's fees as prevailing parties under the DTPA and that they were not required to segregate
their attorney's fees because the fees were based on inextricably intertwined claims derived from the
same set of facts. 

 Under the DTPA, a "consumer who prevails shall be awarded court costs and
reasonable and necessary attorneys' fees." Tex. Bus. & Com. Code Ann. § 17.50(d)
(West Supp. 2006). The Texas Supreme Court has held that a plaintiff "who is awarded actual
damages under the DTPA should also be awarded attorney's fees, even though the damage award
is entirely offset by an opposing claim." McKinley v. Drozd, 685 S.W.2d 7, 10 (Tex. 1985). While
McKinley involved a DTPA claim offset by a counterclaim rather than settlements from other
defendants, the court emphasized the "legislative mandate to liberally construe the [DTPA] to protect
consumers from deceptive practices, and the legislative intent to provide consumers with an efficient
and economical means to seek redress for those deceptive practices." Id. at 9. 

 The Texas Supreme Court has not ruled on whether the reasoning in McKinley would
apply in a situation where the damages owed by one defendant, such as Jauregui in the present case,
were entirely offset by settlement amounts from other defendants. The appellate courts have been
split in determining whether a plaintiff "prevails" under the DTPA where settlement amounts from
other defendants exceed the judgment. Jauregui relies primarily on Hamra v. Gulden,
898 S.W.2d 16, 19 (Tex. App.--Dallas 1995, writ dism'd w.o.j.), which held that a plaintiff who
sued two defendants jointly and severally did not prevail on a DTPA claim where the settlement
credit from one defendant exceeded the damages found at trial, citing only Blizzard v. Nationwide
Mutual Fire Insurance Co., 756 S.W.2d 801, 806 (Tex. App.--Dallas 1988, no writ), to
support this holding. 

 The payments made to the plaintiff prior to trial in Blizzard, however, constituted
insurance payments from her insurer. Id. at 806-07. The plaintiff sued her insurance company, but
the amount of damages found by the jury at trial did not exceed the total amount of insurance
payments paid to the plaintiff by the defendant prior to trial. These pretrial payments, made by the
defendant subject to the judgment rather than a settling party, resemble the insurance benefits paid
prior to trial by the defendant in Allstate Insurance Co. v. Bonner, 51 S.W.3d 289, 292 (Tex. 2001),
where the plaintiff could not recover attorney's fees under the insurance code because the judgment
amount owed by a defendant insurance company was entirely offset by benefits previously paid by
that defendant. In cases where the amount of damages found by the jury at trial is lower than
payments previously paid to the plaintiff by the defendant to compensate for such damages, it is
reasonable to view the plaintiff as not having prevailed on a claim.

 In the present case, however, the jury did not find that Jauregui owed less in damages
than some amount that Jauregui had already paid to the Osbornes. Instead, the jury found Jauregui
responsible and assessed damages in the amount of $835,000, while Jauregui reaped the benefits of
its refusal to settle by offsetting the entire judgment with settlement funds paid by other defendants.

 We find the facts in the instant case to more closely resemble those in
Roberts v. Grande, 868 S.W.2d 956, 962 (Tex. App--Houston [14th Dist.] 1994, no writ), in which
the plaintiff was allowed an award of attorney's fees even though the judgment was entirely offset
by settlement amounts. "[A]pplying an offset from a previous settlement should not deprive a
consumer of its attorney's fees." Id.

 The Osbornes made a settlement offer to Jauregui prior to trial in the amount of
$866,000, which proved to be a reasonable demand in light of the subsequent jury award, at a time
when the Osbornes' attorney's fees had only reached $22,000. Jauregui responded with a counter-offer of only $12,810, forcing the Osbornes to incur an additional $1,127,641.30 in attorney's fees. (6) 
The Osbornes should not be penalized for proceeding to trial when their good-faith attempt to
negotiate a settlement prior to filing suit was refused.

 The dissent maintains that the Osbornes should not be awarded attorney's fees
because they were fairly compensated for their damages before trial and that they should not continue
to "litigate a claim after being made whole." However, the dissent assumes that the Osbornes were
fairly compensated for their damages, ignoring the fact that the Osbornes put on evidence at trial that
they suffered at least $2,418,153 in damages, excluding damages for mental anguish, bodily injury,
and attorney's fees. Before litigation began, State Farm's experts had estimated that the Osbornes'
damages exceeded their homeowners' insurance policy limit of $1,874,687, which left an uninsured
deficit of approximately $600,000, not including uncovered damages such as mental anguish, bodily
injury, and attorney's fees. Meanwhile, shortly before trial, the Osbornes were able to negotiate
settlement amounts with certain defendants, but only after incurring substantial attorney's fees. The
settlement amounts totaled $1,260,500 and were placed in trust because of State Farm's subrogation
claim. Thus, prior to trial it was unclear whether the Osbornes would actually receive any of the
settlement funds due to State Farm's subrogation interest. In light of the damage estimates produced
by both the Osbornes and State Farm, it was highly unlikely that the Osbornes could have predicted
that a jury would find that they suffered only $835,158.78 in damages. 

 While it is true that the Osbornes had received $1,874,687 from State Farm in
insurance payments prior to trial and even assuming that they would receive all of the $1,260,500
in settlement amounts for a total of $3,135,187, the Osbornes were also relying on evidence that they
had suffered at least $2,418,153 in damages and incurred almost $1,149,641 in attorney's fees for
a total of $3,567,794. Therefore, unless the Osbornes went to trial, they would still have had at least
$432,607 in uncompensated damages. If the jury had agreed that the Osbornes suffered $2,418,153
in damages as a result of Jauregui's conduct, and the trial judge had awarded the Osbornes their full
$1,149,641 in attorney's fees, the Osbornes would have recovered $2,307,294 at trial, taking into
account the dollar-for-dollar settlement credit. Assuming the Osbornes would then have been "made
whole," and assuming State Farm properly asserted its subrogation claim to $1,874,687, the
Osbornes would have been left with the $432,607 they needed to be fully compensated. Faced with
these circumstances prior to trial, it was not at all unreasonable for the Osbornes to continue to
pursue their claims against Jauregui.

 Awarding attorney's fees to the Osbornes before applying the settlement credit is
consistent with the reasoning in McKinley and the purpose of the DTPA. The Texas legislature
determined that the DTPA "shall be liberally construed and applied to promote its underlying
purposes, which are to protect consumers against false, misleading, and deceptive business practices,
unconscionable actions, and breaches of warranty and to provide efficient and economical
procedures to secure such protection." Tex. Bus. & Com. Code Ann. § 17.44(a) (West 2002). 
Because we find that the Osbornes were prevailing parties under the DTPA, we conclude that the
trial court erred by holding that the Osbornes were not entitled to attorney's fees because they did
not prevail under the DTPA. However, the trial court also held that the Osbornes were not entitled to attorney's
fees because they failed to segregate the fees among the various claims and parties. The Osbornes
contend that they are not required to segregate their attorney's fees by claim or defendant because
the fees are related to inextricably intertwined claims that are based on a common set of facts.

 Generally, a party seeking attorney's fees has a duty to segregate the fees incurred in
pursuing claims or defendants for which fees are recoverable from those in which they are not, and
a trial court may refuse to award attorney's fees in the absence of segregation. West Beach Marina,
Ltd. v. Erdeljac, 94 S.W.3d 248, 267 (Tex. App.--Austin 2002, no pet.). However, there has
historically been an exception to this rule when claims "are dependent upon the same set of facts or
circumstances and thus are 'intertwined to the point of being inseparable.'" Stewart Title Guar. Co.
v. Sterling, 822 S.W.2d 1, 11 (Tex. 1991) (quoting Gill Sav. Ass'n v. Chair King, Inc., 783 S.W.2d
674, 680 (Tex. App.--Houston [14th Dist.] 1989), modified, 797 S.W.2d 31 (Tex. 1990)). The
Osbornes argue that they are subject to this exception because the facts necessary to prove that the
various subcontractors and suppliers performed defective work or supplied defective products are
the same facts necessary to prove that Jauregui failed to construct the house in a good and
workmanlike manner. 

 The Texas Supreme Court recently curtailed the Stewart Title exception, stating that
intertwined facts do not make fees recoverable and that "it is only when discrete legal services
advance both a recoverable and unrecoverable claim that they are so intertwined that they need not
be segregated." Chapa, 212 S.W.3d at 313-14. However, the Osbornes' failure to segregate fees
does not mandate a denial of all attorney's fees because "an unsegregated damages award requires
a remand." Id. at 314.

 We find that the Osbornes have a duty to segregate their attorney's fees into
recoverable and nonrecoverable claims. While the claims against Jauregui and the various settling
defendants may arise from the same set of facts, this exception no longer applies. We remand for
purposes of determining the amount of attorney's fees incurred by the Osbornes on the DTPA claim
against Jauregui in a manner consistent with Chapa. See id. 

Subrogation 

 The trial court determined that State Farm did not have subrogation rights against the
settlement proceeds because State Farm did not meet its burden to present evidence allocating the
settlement amounts to losses covered by insurance payments. State Farm argues that its contractual
right of subrogation displaces any equitable considerations regarding whether the Osbornes have
been "made whole" for their damages. State Farm further argues that even under an equitable
determination of subrogation rights, it is entitled to the settlement proceeds because the Osbornes
have already been "made whole" by insurance payments totaling $1,874,687.28. State Farm
contends that it is entitled to the settlement funds without being required to show which settlement
amounts were allocated to damages covered by insurance payments.

 The principle of subrogation provides that an insurer that has paid its insured for
losses covered by an insurance policy is entitled to the insured's rights and remedies against a third
party for the covered losses. Harris v. American Prot. Ins. Co., 158 S.W.3d 614, 622
(Tex. App.--Fort Worth 2005, no pet.). Texas courts are "particularly hospitable" to the concept. 
Id. (quoting Interfirst Bank Dallas, N.A. v. United States Fid. & Guar. Co., 774 S.W.2d 391, 397
(Tex. App.--Dallas 1989, writ denied)).

 In the absence of a contractual subrogation provision, subrogation rights are "firmly
granted in" and "not easily detached from" equity. Esparza v. Scott & White Health Plan,
909 S.W.2d 548, 552 (Tex. App.--Austin 1995, writ denied). If either an insured or an insurer
"must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured
has paid it to assume." Ortiz v. Great S. Fire & Cas. Ins. Co., 597 S.W.2d 342, 344 (Tex. 1980)
(quoting Garrity v. Rural Mut. Ins. Co., 253 N.W.2d 512, 514 (Wis. 1977)). An insurer is not
entitled to an equitable right of subrogation until the insured is "made whole" for his loss. Ortiz,
597 S.W.2d at 343; Esparza, 909 S.W.2d at 552. 

 In determining equitable subrogation rights, "[t]o avoid injustice, the equities must
still be balanced in deciding what amount, if any, the subrogee is entitled to receive in a given
case . . . . A trial court is not cast adrift on the sea of equity without guidance, however. Various
rules and considerations offer moorings for the trial court in applying equity." Esparza, 909 S.W.2d
at 552. Such considerations include the prevention of a double recovery by the insured, the parties'
conduct during settlement or before the court, and evidence of damages. Id. at 552-553. 

 In a determination of subrogation based purely on equitable factors, the trial court did
not abuse its discretion in denying subrogation rights to State Farm. For example, State Farm, by
arguing at trial and on appeal that the Osbornes are not entitled to attorney's fees under the DTPA,
asserted a position that was adverse to the very parties whose interests State Farm, as an insurer, was
expected to protect. The fact that State Farm attempts to compromise the Osbornes' efforts to
achieve the fullest possible recovery suggests that equity should not favor State Farm in a
determination of subrogation rights.

 Furthermore, State Farm's statements at trial directly conflict with its argument on
appeal that the Osbornes were "made whole" because the jury returned a judgment of $835,158.78
in damages, and the total insurance payments received by the Osbornes exceed this amount. For
example, State Farm stated in its third amended petition in intervention that the Osbornes suffered
damages at least in the amount of $1,902,247.44. A judicial admission is conclusive upon the party
making it, relieves the opposing party's burden of proving the admitted facts, and bars the admitting
party from disputing it. Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc., 606 S.W.2d 692, 694
(Tex. 1980). State Farm also put on an expert, Buddy Henderson, to testify that $1,477,351 was a
reasonable cost of repairs for the house and that he relied on this amount in determining that State
Farm should pay the full policy limits to the Osbornes. A party's testimony at trial will be treated
as a judicial admission if (1) the statement is deliberate, clear, and unequivocal, (2) the statement is
contrary to an essential fact embraced in the theory of recovery asserted by the party giving the
testimony, (3) the statement is not also destructive of the opposing party's theory of recovery, and
(4) it would be unjust to permit a party to recover after he has sworn himself out of court by clear
and unequivocal testimony. Id. Each of these factors is satisfied with reference to Henderson's
expert testimony that the cost of repairs alone could reasonably be $1,477,351. However, State Farm
now asserts that the Osbornes' damages are limited to the amount of the jury verdict. As a policy
matter, allowing this drastic change in State Farm's damages assessment would mean that insured
parties could not accept insurance payments from an insurer without fear that in the future, the
insurer would claim that it had overpaid and that the excess should be used to offset settlement
payments for mental anguish or other uncovered damages. These factors support the trial court's
equitable decision to deny subrogation to State Farm. Based on longstanding Texas law regarding
equitable subrogation at the time the trial court's judgment was issued, the trial court did not
abuse its discretion. 

 However, the Texas Supreme Court recently held in Fortis Benefits v. Cantu, No. 05-0791, 2007 Tex. LEXIS 603, at *18-19 (Tex. June 29, 2007), that contract-based subrogation rights
trump equitable considerations, which are to be used by default in the absence of a contractual right
to subrogation. As a result, equitable considerations such as the "made whole" doctrine are to apply
"only in the absence of contrary reimbursement language in the contract." Id. at *18. The contract
at issue in Fortis established a right of subrogation, stating, "Upon payment of benefits, We will be
subrogated to all rights of recovery a Covered Person may have against any person or
organization. . . . Such right extends to the proceeds of any settlement or judgment; but is limited
to the amount of benefits We have paid." Id. at *5 n.11. The Texas Supreme Court noted that
because the provision was "not imprecise or ambiguous" and it gave Fortis "an unfettered right to
recover the proceeds from the settlement," equitable considerations must give way to the language
of the contract. Id.

 State Farm, in its petition for intervention, stated that "State Farm is equitably entitled
to seek recovery for such damages against Defendants as a real-party-in-interest, and is authorized
to pursue this claim in the name of its insured. [The Osbornes] have assigned their rights and
interest to the extent of such benefits paid to them by State Farm." This language reflects both
equitable and contractual subrogation principles. In addition, State Farm claims in its
October 20, 2004 motion to modify, correct, or reform the judgment that the trial court's judgment
is in error "in that it denies State Farm Lloyds the right to apply settlement funds received from third
parties in satisfaction of State Farm Lloyds [sic] contractual and equitable subrogation claim." (7)

 The subrogation provision in the Osbornes' homeowners' insurance policy with State
Farm reads in its entirety:


Subrogation. An insured may waive in writing before a loss all rights of recovery
against any person. If not waived, we may require an assignment of rights of
recovery for a loss to the extent that payment is made by us.


If an assignment is sought, an insured must sign and deliver all related papers and
cooperate with us.


 This provision, which merely states that State Farm "may" require an assignment of
rights, is significantly more ambiguous than the provision at issue in Fortis, which states that the
insurer "will be subrogated to all rights of recovery," including "the proceeds of any settlement or
judgment." Fortis, 2007 Tex. LEXIS 603, at *5 n.11 (original emphasis removed, emphases added). 

 Even if State Farm's contractual right to subrogation controls over equitable
considerations, State Farm may be prevented from recovering settlement funds due to its failure to
allocate the funds to covered versus uncovered losses. The subrogation provision in the Osbornes'
policy states that an assignment of rights may be required "for a loss to the extent that payment is
made by [State Farm]." In a claim for subrogation where settlement amounts are at issue, an insurer
bears the burden of showing what amount, if any, of the settlement amounts correspond to amounts
paid by it. Ortiz, 597 S.W.2d at 344. Subrogation should not be awarded if it is not clear what
portion of the settlement is intended to compensate for covered losses. Id. "In true subrogation
cases, where the insurer is bringing the action against the third party, or is participating in the
insured's action against the third party, recovery by the insurer is generally limited to the same
elements as those for which it has made payment." Lee R. Russ & Thomas F. Segalla, 16 Couch On
Insurance § 226-52 (3d ed. 2000). It is not clear from the record which types of losses were meant
to be covered by the amounts that the Osbornes received from the settling parties. "[T]he mere fact
that an insured receives a recovery from another source may not establish that the amounts recovered
correspond to the same elements of loss for which the insured has already recovered
from the insurer." Id.

 State Farm failed to allocate the settlement funds to covered versus uncovered losses. 
We can assume that because State Farm asserts in its brief that it assisted "vigorously" in securing
the settlements, there was ample opportunity to make such an allocation. There is no evidence that
the remaining settlement amounts are allocable to covered damages, rather than uncovered damages
such as mental anguish, attorney's fees, or any reduction in the house's market value due to the
"golf ball problem." 

 Because the trial court's order denying subrogation rights to State Farm was issued
prior to Fortis and thus before specific contractual subrogation rights were deemed controlling over
equitable principles, the trial court did not have an opportunity to evaluate and interpret the
subrogation clause in the Osbornes' homeowners' policy. Therefore, we remand to the trial court
for a review of the subrogation provision in order to determine whether the language is sufficiently
precise and unambiguous to control over equitable subrogation principles and to evaluate the effect
of State Farm's failure to allocate the settlement funds, in light of the Texas Supreme Court's
holding in Fortis. 

 In the event that Fortis is applicable to the Osbornes' homeowners' policy, the
contractual subrogation provision must control over equitable considerations. In the alternative, if
the trial court finds that Fortis does not apply to the present case because the contractual subrogation
provision is not sufficiently precise and unambiguous, the determination of State Farm's subrogation
rights must be based on the "trial court's balancing of the equities." Esparza, 909 S.W.2d at 552. 
 Based on an evaluation of equitable factors, the trial court did not abuse its discretion
in denying subrogation rights to State Farm. However, we find it significant that at the time such
rights were denied, the Osbornes were also denied their attorney's fees. We have since determined
that the Osbornes should be awarded attorney's fees. As a result, the factors that may be taken into
account by the trial court in balancing the equities to determine subrogation rights have changed. 
Where the facts have changed, the trial court's equitable determination may change as well because
"[e]quity is inextricably tied to facts" and "the conflict of interests in subrogation . . . cannot be
resolved by a bright-line test that curtails a trial court's discretion to apply equity based on the facts
of the case." Id. at 553. In light of the fact that this case has been remanded to the trial court for
purposes of segregating the Osbornes' attorney's fees and to allow for a review of the contractual
subrogation provision and the applicability of Fortis, the trial court, if it finds Fortis to be
inapplicable, may also wish to revisit its equitable determination of State Farm's subrogation rights.

 We reverse the trial court's denial of State Farm's subrogation claim and remand to
the trial court for purposes of reviewing the contractual subrogation provision in light of Fortis and,
if necessary, revisiting its equitable determination of State Farm's subrogation rights as a result of
our award of attorney's fees to the Osbornes and remand for the purpose of calculating the fee award.


CONCLUSION

 Because the Osbornes were prevailing parties under the DTPA, they are entitled to
reasonable and necessary attorney's fees from Jauregui. We reverse the trial court's denial of the
Osbornes' attorney's fees. Because we find that the Osbornes were required to segregate their
attorney's fees, we remand for the purposes of segregation. 

 Because the Texas Supreme Court's recent decision in Fortis Benefits v. Cantu
requires that precise and unambiguous contractual language regarding subrogation controls over
equitable considerations, we reverse the trial court's denial of State Farm's subrogation claim and
remand for a determination of State Farm's subrogation rights in light of the contractual subrogation
provision in the Osbornes' homeowners' policy and, if Fortis is deemed inapplicable, a
determination of State Farm's equitable subrogation rights after any award of attorney's
fees to the Osbornes. 


 Diane Henson, Justice

Before Justices Patterson, Puryear and Henson;

 Dissenting Opinion by Justice Puryear

Reversed and Remanded 

Filed: August 29, 2007
1. Any reduction in the house's market value due to the "golf ball problem" is one example
of a loss suffered by the Osbornes that would generally not be covered by a homeowners' insurance
policy.
2. A pre-suit demand letter is required in order to pursue a claim under the Texas Deceptive
Trade Practices Act. Tex. Bus. & Com. Code Ann. § 17.505(a) (West 2002). This statutory notice
requirement is designed to afford parties the opportunity to negotiate and settle prior to suit,
potentially avoiding lengthy and costly litigation. Star Houston Inc. v. Kundak, 843 S.W.2d 294, 297
(Tex. App.--Houston [14th Dist.] 1992, no writ). If a defendant tenders an offer during settlement
negotiations that is refused by the plaintiff, and the amount tendered turns out to be equal to or
greater than the damages found at trial, the plaintiff's attorney's fee award is limited to the amount
of fees incurred at the time the rejected settlement offer was made. Tex. Bus. & Com. Code Ann.
§ 17.5052(h) (West 2002). 
3. The Osbornes also sued Jauregui's realtor, but those claims are not before us on appeal.
4. No questions were submitted to the jury regarding the measure of damages for items such
as permanent reduction in market value of the home or the loss of time spent by the Osbornes in
attempting to correct problems with the house. See Ludt v. McCollum, 762 S.W.2d 575, 576
(Tex. 1988) (holding that permanent reduction in market value after repair is recoverable in DTPA
claim); Village Mobile Homes, Inc. v. Porter, 716 S.W.2d 543, 549-50 (Tex. App.--Austin 1986,
writ ref'd n.r.e.) (holding that damages for lost time may be recoverable in DTPA claim).
5. The Osbornes have since received $17,606.01 from one of the defendants and state that
if they prevail, the fees should be reduced to $1,132,035.29. They also seek $50,000 in appellate
fees.
6. It is not uncommon for an attorney's fee award to exceed the damages recovered. Hoover
Slovacek L.L.P. v. Walton, 206 S.W.3d 557, 563 n.8 (Tex. 2006).
7. State Farm further states in its November 12, 2004 motion to modify, correct, or reform
the amended final judgment that "because State Farm Lloyds has already paid $1,874,687.28 to the
Plaintiffs, and the Plaintiffs' damages were only $835,158.78, State Farm Lloyds is both equitably
and contractually entitled to subrogation."