**DANNY DARBY REAL ESTATE, INC., Appellant,**

v.

**Charles Ray JACOBS, Appellee.**

**No. 05-86-00953-CV.**

Court of Appeals of Texas, Dallas.

Oct. 12, 1988.

Rehearing Denied Nov. 22, 1988.

Harold F. Curtis, Jr., D. Robert Smith, Greenville, for appellant.

Charles M. Wilson, III, Dallas, for appellee.

Before HOWELL, STEWART and THOMAS, JJ.

## ON REMAND FROM THE SUPREME COURT

HOWELL, Justice.

This case comes to us on remand from the Supreme Court. Appellee Charles Ray Jacobs (Buyer) sued appellant Danny Darby Real Estate, Inc., (Realtor) under the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA).[1] Buyer asserted that Realtor had engaged in deceptive practices and unconscionable conduct in connection with Realtor's attempted sale of land which Realtor allegedly represented as eligible for the land purchase program of the Texas Veteran's Land Board (the Board). The trial court entered judgment on the jury's verdict in Buyer's favor, and Realtor appealed, asserting twelve points of error.

In his twelfth point of error, Realtor contended that Buyer failed to present any evidence that the expenses which he sought to recover as damages were reasonable or necessary. We agreed, and we reversed the trial court's judgment and remanded the case for a new trial. *Danny Darby Real Estate v. Jacobs,* 740 S.W.2d 18 (Tex. App.—Dallas 1987), *rev'd,* 750 S.W.2d 174 (Tex.1988). Finding some evidence that the expenses were reasonable and necessary, the Supreme Court reversed our decision and remanded the cause to us for consideration of Realtor's eleven remaining points of error. *Jacobs v. Danny Darby Real Estate, Inc.,* 750 S.W.2d 174 (Tex.1988).

Eight of Realtor's remaining points of error attack the sufficiency of the evidence to support the jury's findings. Realtor contends that there was legally and factually insufficient evidence to support the jury's findings that: (1) Realtor committed deceptive trade practices in violation of sections 17.46(b)(2), 17.46(b)(5), 17.46(b)(7), and 17.46(b)(12); (2) Realtor engaged in an unconscionable action or course of conduct; (3) Realtor's actions were a producing cause of Buyer's damages; and (4) Realtor acted "knowingly." In addition to these sufficiency points, Realtor also contends that a fatal variance existed between Buyer's pleadings and proof, that the trial court's charge contained an incorrect definition of the term "unconscionable action or course of conduct," and that Buyer's recovery was based on an incorrect measure of damages. After considering these points of error, we affirm the judgment of the trial court.

## FACTS

In the autumn of 1979, Buyer contacted Realtor in response to Realtor's advertisement offering land for sale to Texas veterans. Buyer informed Realtor's agent, Charles Brown, that he was interested in purchasing land eligible for financing through the land purchase program of the Texas Veterans Land Board.[2] Brown showed Buyer a tract of land, and according to Buyer's testimony, stated that the tract was eligible for Board financing. On October 6, 1979, Buyer entered into a contract for sale and purchase of the property with its owner, George Pennington, an agent associated with Realtor. The contract was to be consummated when Buyer obtained Board financing.

After executing this contract, Buyer provided Realtor a deposit of $1,000.00 on the property. Realtor helped Buyer obtain from the Board a contract form for the sale and purchase of the property. This contract form served as Buyer's formal application to the Board for financing of the

---

1. The Texas Deceptive Trade Practice—Consumer Protection Act is found in TEX.BUS. & COM. CODE ANN. §§ 17.41–17.63 (Vernon 1987). All citations are to this act unless otherwise noted.

2. The land purchase program of the Texas Veterans Land Board provides favorable financing to eligible Texas veterans in connection with the purchase of tracts of land meeting certain requirements. After locating potentially eligible property, the veteran and the property owner execute an application and contract of sale which is forwarded to the Board along with a five percent down payment. If the Board accepts the property, it purchases the land in fee and executes a contract of sale and purchase with the veteran. When the veteran purchaser fulfills his contract, he will be issued a deed by the Board.

property. Buyer executed this contract and application on December 27, 1979.

Between the execution of these two contracts, Buyer purchased a mobile home and installed it on the property. Buyer testified that Brown expressly gave him permission to do so. Buyer also installed a road, a septic tank, and water and utility lines on the property.

In February 1980, the Board informed Buyer that the Board would not finance Buyer's purchase of the property because to do so would violate the Board's "subdivision rule." That rule prohibited the Board from purchasing more than five tracts out of any large tract of land.[3] According to a Board publication, known to Realtor and its agents, if one or more individuals purchased separate tracts out of a larger piece of land after 1975 and subdivided the newly purchased tracts for sale to veterans, the Board would accept no more than five tracts from the original large piece of land.

In this case, the property that Buyer was to purchase was initially part of a large tract (the Tumlinson tract) purchased in 1979 by Bobby J. Adams, an agent associated with Realtor. This large tract was then subdivided into smaller tracts, owned by Adams, George Pennington, and Danny Darby, Realtor's president. Realtor offered parcels from the smaller tracts for sale to veterans. At the time the Board considered Buyer's application to purchase one of these smaller parcels, it had already financed the purchase of five parcels out of the large tract originally purchased by Adams. Therefore, the Board concluded that the subdivision rule prevented it from financing Buyer's tract.

After the Board refused Buyer's application, Realtor offered to finance Buyer's purchase of the tract. Because Realtor's financing involved terms less favorable than the Board's financing, Buyer declined. Realtor returned Buyer's deposit and instituted procedures to recover possession of the property for its owner. Buyer vacated the land, losing his mobile home and im-

provements. Alleging that Realtor's conduct violated the DTPA, Buyer then sued Realtor to recover these losses. The trial court entered judgment for Buyer based on jury findings in his favor, and Realtor appeals.

## DECEPTIVE PRACTICES

In his first and fifth points of error, Realtor contends that there was no evidence or, alternatively, insufficient evidence to support the jury's answers to question number one. That question asked the jury did Realtor:

a) Cause confusion or misunderstanding as to the sponsorship, approval, or certification of goods or services?

b) Represent that goods or services have sponsorship, approval, characteristics, or benefits which they do not have?

c) Represent that goods are of a particular standard or quality when they are of another standard or quality?

d) Represent that an agreement involves rights which it does not have or involve or which are prohibited by law?

The four subparts of this question, based on the statutory language, asked the jury whether Realtor had committed acts defined as deceptive trade practices by sections 17.46(b)(2), 17.46(b)(5), 17.46(b)(7), and 17.46(b)(12), respectively. The jury responded affirmatively to each subpart.

Realtor raises both "no evidence" and "insufficient evidence" points. In reviewing a "no evidence" point, this court must view the evidence in the light most favorable to the finding, considering only the evidence and inferences which support the finding and rejecting any evidence or inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). In reviewing an insufficient evidence point, we must consider all of the evidence. We may reverse only if the evidence supporting the finding is so weak or the finding is so against the weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*,

---

**3.** The subdivision rule allowed the Board to purchase five tracts out of the larger tract or twenty percent of the total acreage of the larger

tract, whichever was greater. In this case, the five-tract limit was the applicable limit on the Board's purchases.

709 S.W.2d 175, 176 (Tex.1986); *Garza*, 395 S.W.2d at 823.

▮ Realtor's president, Danny Darby, testified that Realtor's agents were instructed to warn customers that Board financing could not be guaranteed. He also testified that he did not believe that any of Realtor's agents assured Buyer that the property would qualify for Board financing. Buyer testified, however, that Realtor's advertisements suggested that the property was for sale through the Board and that Brown told him that the property was eligible for Board financing. Brown did not testify. The jury is entitled to resolve conflicting testimony and make reasonable deductions from the evidence. *Jim Walter Homes, Inc. v. Gonzalez*, 686 S.W. 2d 715, 718 (Tex.App.—San Antonio 1985, writ dism'd w.o.j.). Confronted with this evidence, the jury was entitled to infer that Brown affirmatively told Buyer, without qualification, that the property was eligible for the Board's land purchase program.

▮ It is undisputed that the Board determined that its purchase of the property would violate the subdivision rule and refused Buyer's application. The record also contains evidence, however, that the Board often failed to enforce the subdivision rule, that the Board had purchased more than five tracts of land when confronted with arrangements similar to Realtor's, and that several months after rejecting the contract involved herein, it approved another transaction relating to the identical land in this case. Realtor contends that because the Board later approved purchase of the land offered to Buyer, Realtor's statements did not misrepresent the property's eligibility. We disagree.

Viewed from a "no evidence" standard, Buyer's testimony, along with the Board's determination that the property was ineligible, represents sufficient evidence to support the jury's finding that Realtor represented the property as having sponsorship, approval, characteristics, or benefits that it did not have. *Cf. Hurst v. Sears, Roebuck & Co.*, 647 S.W.2d 249, 252 (Tex.1983) (finding defendant's false representation that it would obtain approval of its work from government authority actionable under section 17.46(b)); *Nagy v. First National Gun Banque Corp.*, 684 S.W.2d 114, 116 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) (an act is deceptive if it has a tendency to deceive the ignorant, the unthinking, and the credulous who do not stop to analyze but are governed by appearances and general impressions). This same evidence also constitutes some evidence that Realtor caused misunderstanding as to the sponsorship, approval, or certification of the property. Furthermore, there is testimony in the record indicating that the Board's later approval of the property's purchase came after it had declared a moratorium on enforcement of the subdivision rule. Thus the Board's later acceptance of the property did not require the jury to conclude that the Board erred in its initial conclusion that the property was ineligible. Similarly, the fact that the Board failed to enforce the subdivision rule in other transactions did not preclude the jury from finding that, in the transaction with Buyer, Realtor represented the land as having characteristics or benefits that it did not have and that Realtor caused confusion as to its approval or certification. Considering all of the evidence, we cannot conclude that these findings were so against the weight of the evidence as to be manifestly unjust.[4]

---

**4.** Although Realtor does not discuss it in his brief, according to Darby's testimony, at the time that Buyer first talked to Brown and completed the October 6th contract, fewer than five parcels out of the original large tract of land had been purchased by the Board. Therefore, had Buyer applied at that time, the property would have been eligible. However, from the beginning, Realtor's plan contemplated the sale of more than five parcels out of the large tract. Furthermore, Buyer could not have applied to the Board until he first obtained the contract

form from them, and applications from other veterans could have been approved in the interim. Thus, considering all of the evidence, there is sufficient evidence to support the jury's findings that Realtor represented the land as having characteristics or benefits that it did not have in the transaction with Buyer and that Realtor caused confusion as to its approval. *Cf. Group Hospital Services, Inc. v. Daniel*, 704 S.W.2d 870, 876 (Tex.App.—Corpus Christi 1985, no writ) (defendant's statement, though technically not

The record contains legally and factually sufficient evidence to support the jury's answers to subparts a and b of question one. These findings establish that Realtor committed deceptive practices as defined by sections 17.46(b)(2) and 17.46(b)(5). Acts in violation of any one of the subsections of section 17.46(b), where those acts are a producing cause of the consumer's damages, are sufficient to sustain a judgment in favor of the consumer. § 17.50. Therefore, we need not consider Realtor's challenges to the jury's answers to the other subparts of question one; any error as to these subparts is harmless. Realtor's first and fifth points of error are overruled.

### PRODUCING CAUSE

At trial, Buyer sought recovery of damages resulting from the loss of his mobile home and recovery of his expenses in installing a road, septic tank, and water and utility lines on the property. In his third and seventh points of error, Realtor contends that there was no evidence or insufficient evidence to support the jury's finding that Realtor's acts were a producing cause of these damages.

A consumer can recover actual damages resulting from deceptive practices enumerated in section 17.46(b) where those practices are a producing cause of the damages. §§ 17.50(a)(1), 17.50(b)(1). A producing cause is an efficient, exciting, or contributing cause which in a natural sequence produced the injury complained of. *Rourke v. Garza,* 530 S.W.2d 794, 801 (Tex.1975); *Dubow v. Dragon,* 746 S.W.2d 857, 860 (Tex.App.—Dallas 1988, no writ). Producing cause has also been described as factual causation. *Dubow,* 746 S.W.2d at 860. In the present case, Buyer testified that he wished to purchase property through the Board, and he refused to accept the property when he discovered that it was ineligible for Board financing. This provided evidence from which the jury could conclude that, absent Realtor's incorrect representations that the property was eligible for Board financing, Buyer would not have entered into a contract to pur-

chase the property, nor would he have made the improvements which he subsequently lost.

Realtor asserts, however, that Buyer acted without Realtor's knowledge in installing the mobile home and improving the property. Realtor contends that Buyer's conduct in unilaterally taking possession of and improving the property prior to closing was so unreasonable that it represented an independent cause breaking any causal link between Realtor's actions and Buyer's damages. We disagree.

Foreseeability is not an element of producing cause. *Hycel, Inc. v. Wittstruck,* 690 S.W.2d 914, 922 (Tex.App.—Waco 1985, writ dism'd w.o.j.) There can be more than one producing cause. *Rourke,* 530 S.W.2d at 801. Buyer testified that Realtor expressly gave him permission to move onto the property. Although Realtor attempted to discredit Buyer's testimony, the jury was entitled to accept it. *See Gonzalez,* 686 S.W.2d at 717. Under these circumstances, the fact that Buyer's actions may have also been a cause of his injuries does not preclude a finding that Realtor's acts were a producing cause of Buyer's damages. *See Town East Ford v. Gray,* 730 S.W.2d 796 (Tex. App.—Dallas 1987, no writ) (rejecting defendant's contention that plaintiff's damages were caused by plaintiff's own actions). Realtor's third and seventh points of error are overruled.

### KNOWING CONDUCT

In response to question four, the jury found that Realtor's conduct in the course of its transaction with Buyer was knowingly committed. The charge defined "knowingly" as "actual awareness of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim, if any, but actual awareness may be inferred where objective manifestation[s] indicate that a person acted with actual awareness." Conceding that the court's definition of "knowingly" was correct, Realtor contends in his fourth and eighth points of

an absolute falsity, served as an adequate factu-

al basis for jury's finding of DTPA violation).

error that the evidence was legally and factually insufficient to support the jury's finding.

At trial, Darby testified that he and all of Realtor's agents were familiar with the Board publication that included the subdivision rule. The proposed sale of property to Buyer was part of a plan to allow Realtor's agents to sell more than five tracts out of the Tumlinson tract through the Board's land purchase program. On the other hand, Darby also testified that he did not believe that the planned sale violated the subdivision rule, that he had successfully completed a similar series of transactions prior to this one, that plans such as this were routinely used to enlarge the number of eligible tracts, and that he had received approval of his plan from an attorney employed by the Board. Darby could not remember the attorney's name, however. Furthermore, although Darby testified that they were following the Board's instructions, the affidavit which Pennington filed with Buyer's application to the Board stated that Pennington had purchased his share of the original large tract directly from Tumlinson rather than through Adams.

■ This court cannot pass on the credibility of the witnesses or substitute its judgment for that of the jury, even though we might have reached a different result. *Precision Homes, Inc. v. Cooper,* 671 S.W. 2d 924, 929 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). The conclusion that Darby was aware that, at least technically, no more than five tracts out of the original Tumlinson tract were eligible for purchase is not so against the weight of the evidence as to be manifestly unjust. There is legally and factually sufficient evidence to support a finding that Realtor was aware of the falsity of its representations that the land was eligible for the Board's land purchase program.

■ In addition, even if the evidence is insufficient to support the jury's finding that Realtor acted knowingly, any error with regard to that finding is harmless. Section 17.50(b) sets out the damages avail-

able to a prevailing plaintiff. That section states, in pertinent part:

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of actual damages found by the trier of fact. In addition the court shall award two times that portion of the actual damages that does not exceed $1,000. If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1,000.

TEX.BUS. & COM.CODE ANN. § 17.50(b)(1).

Section 17.50(b)(1) directs the trial court to award two times the first $1,000.00 of actual damages without regard to whether the defendant's conduct is knowing. This award is *mandatory* if actual damages are found. *Martin v. McKee Realtors, Inc.,* 663 S.W.2d 446, 447 (Tex.1984). In this case, the trial court awarded Buyer $8,500.00 in actual damages as found by the jury, $2,000.00 based on the jury's finding of knowing conduct, attorney's fees, and pre-judgment and post-judgment interest. Under section 17.50(b)(1), Buyer was entitled to the trial court's award of an additional $2,000.00 even without a jury finding of knowing conduct.

## VARIANCE

Realtor asserts in his ninth point of error that the trial court erred in overruling Realtor's motion for a directed verdict because a fatal variance existed between Buyer's pleadings and proof. Realtor points out that Buyer pleaded the execution of the contract that was signed in December but not the execution of the first contract, signed in October. At trial, Buyer introduced both contracts. Realtor contends that Buyer's proof at trial "spoke only to the preparation of the first [October] Contract" because all of the expenditures for which Buyer sought to recover were incurred before the execution of the December contract. Realtor asserts that Buyer's pleadings failed to give fair notice

of the contract upon which Buyer relied at trial.

■ In order for a variance between pleading and proof to be reversible error, the variance must be substantial, misleading, and a prejudicial departure from the pleadings. *Brown v. American Transfer and Storage Co.*, 601 S.W.2d 931, 937 (Tex.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980); *Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183, 187 (Tex.1977). In the present case, there is no showing that the variance in question was substantial, misleading, or prejudicial. Realtor's argument is based on the premise that Buyer sought recovery on the basis of one of these two contracts. This is not the case. Buyer pleaded actionable conduct on Realtor's part in misrepresenting the eligibility of the property through Realtor's advertisements and employees and in allowing Buyer to make valuable improvements to the property and then forcing him off the property when the Board determined that the property was ineligible. Buyer's proof at trial substantially conformed to these pleadings. Any variance resulting from the introduction of evidence regarding the October contract, therefore, was not reversible error. *See Air & Pump Co. v. Almaquer*, 609 S.W.2d 309, 312 (Tex.Civ.App.—Corpus Christi 1980, no writ).

## DAMAGES

When the parties learned that the Board would not finance Buyer's purchase of the property and Buyer vacated the property, he lost his mobile home and the other improvements that he had installed on the property. At trial, Buyer introduced evidence that he had expended approximately $3,000.00 installing a road, septic tank, and water and utility lines. Regarding the mobile home, he testified that he lost $7,732.46 consisting of his deposit, down payment, and insurance payment. He sought recovery of these amounts as well as an additional loss of $7,000.00 on his home.[5] In response to question six, the jury awarded him $8,500.00 as actual damages resulting from Realtor's conduct.

In his eleventh point of error, Realtor asserts that the trial court erred in overruling his motion for directed verdict and in entering judgment on the jury's answer to question six because the wrong measure of damages was used. Realtor contends that the damages for which Buyer sought recovery were special damages. Realtor argues that Buyer could not recover these damages at common law and, therefore, cannot recover them under the DTPA.

■ Section 17.50(b)(1) allows the plaintiff to recover the amount of actual damages factually caused by the defendant's conduct. *See Rotello v. Ring Around Products, Inc.*, 614 S.W.2d 455 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Actual damages are those recoverable at common law. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). Realtor contends that, at common law, the damages that Buyer seeks are special damages too remote to be recovered. Contrary to Realtor's assertion, where a plaintiff seeks rescission of a contract to convey real estate induced by fraudulent misrepresentation, common law allows recovery for good faith improvements. *Tashnek v. Hefner*, 282 S.W.2d 298, 303 (Tex.Civ.App.—Galveston 1955, writ ref'd n.r.e.).

■ In general, the Supreme Court has approved two measures of damages in DTPA actions based on misrepresentation: the "out of pocket" measure and the "benefit of the bargain" measure. *W.O. Bankston Nissan v. Walters*, 754 S.W.2d 127, 128 (Tex.1988). Buyer has presented no evidence that would allow him to recover under either of these measures. The "benefit of the bargain" and "out of pocket" rules are not the exclusive means of mea-

---

**5.** The basis for this loss is not entirely clear from the record. It is clear, however, that at least some part of the $7,000.00 represents Buyer's estimate of the value of the labor that he expended in making improvements to the home. Buyer contends that that value was lost when the home was dismantled and removed from the land.

suring damages in a DTPA action, however. *See Kish v. Van Note,* 692 S.W.2d 463, 466 (Tex.1985); *see also W.O. Bankston Nissan,* 754 S.W.2d at 128–29 (Mauzy, J., concurring on rehearing). The DTPA permits an injured plaintiff to recover the greatest amount of actual damages alleged and factually established to have been caused by the deceptive practice, including related and reasonably necessary expenses. *Kish,* 692 S.W.2d at 466.

In this case, the evidence indicates that plaintiff's deposit and down payment represent the amount of his loss on his purchase and resale of his mobile home. We hold that plaintiff may recover his deposit and down payment on his mobile home and his expenses for installation of the road, septic tank, and water and utility lines. *See Kish,* 692 S.W.2d at 468 (allowing recovery of installment payments); *Village Mobile Homes v. Porter,* 716 S.W.2d 543 (Tex.App. —Austin 1986, writ ref'd n.r.e.) (allowing recovery under DTPA for improvements to property and time spent in title search). Because the uncontroverted evidence as to the amount of these damages exceeded the amount of actual damages found by the jury, we need not consider whether Buyer can recover the additional $7,000.00 that he sought or his expenditure for insurance on the mobile home. Realtor's eleventh point of error is overruled.

## UNCONSCIONABLE CONDUCT

Realtor's second, sixth, and tenth points of error concern the jury's finding that Realtor engaged in unconscionable conduct in his transactions with Buyer. Realtor's deceptive practices under sections 17.-46(b)(2) and 17.46(b)(5) constitute independent grounds for Buyer's recovery. *See* § 17.50. Consequently, our disposition of Realtor's other points of error is sufficient to uphold the trial court's judgment. Therefore, any error as to these points is harmless.

The judgment of the trial court is affirmed.