# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00179-CV

**Jose Duran and Maria Duran, Appellants**

**v.**

**JB Goodwin Realtors and Xuan Le, Appellees**

---

**FROM THE COUNTY COURT AT LAW NO 2 OF TRAVIS COUNTY**
**NOS. C-1-CV-12-012278 & C-1-CV-12-003023,**
**HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING**

---

## M E M O R A N D U M  O P I N I O N

Jose Duran and his wife Maria Duran entered into a written contract to purchase real property from Michael O. Price. The Durans sued JB Goodwin Realtors and its agent Xuan Le (collectively, "Goodwin") based upon representations Goodwin made at a time that preceded the real estate transaction, when Goodwin had the property listed for sale. Goodwin filed a motion for summary judgment, which the trial court granted. The Durans appeal. We will affirm.

## BACKGROUND

Considering the evidence in the light most favorable to the Durans, the record reflects the following. Michael O. Price owned approximately one acre of land and sought to sell one-half acre of that property. Price retained Goodwin to advertise and market his property for sale, and they entered into an exclusive listing agreement that provided for Goodwin to receive a commission from

the sale. From September 1, 2010, to January 31, 2011, Goodwin listed Price's property for sale for $50,000. At some point early on, Goodwin became aware that Price's property was not in fact subdivided, but supposedly the process of subdividing was underway. Goodwin listed the property in the Multiple Listing Service with a notation in the Agents' section stating, "Lots will be subdivided."

Xuan Le posted a "for sale" sign at the property along with a holder containing printed advertising flyers. The printed advertisement stated that a buyer would "own your own land," that the land was "ready for utilities," that the land was "ready for your new home or mobile home," and suggesting the possibility of owner financing. The flyer did not mention any lien and did not state whether the property had been subdivided. When the listing expired, Goodwin did not renew the listing because the property still had not been subdivided.

In November 2010, while the property was still listed by Goodwin, the Durans obtained one of the flyers posted at the property. Mr. Duran, who speaks limited English, never spoke to Xuan Le. Mrs. Duran called the realtor to inquire about the property. She asked Le whether the owner owed anything on the property. She says Le told her that there were no liens on the property, which Le denies, and that they could work on owner financing. In January 2011, Mrs. Duran again called to inquire whether the property was still available. Le told Mrs. Duran that she and her husband could let themselves onto the property if they wanted to see it. Le never met the Durans, and they never discussed whether the property was subdivided. Goodwin's listing expired January 31, 2011, and Goodwin's connection to the property terminated at that time.

On March 1, 2011, three or four months after the Durans first saw a flyer and a month after the listing agreement expired, the Durans decided to purchase the property. The property was no longer listed for sale with a realtor, and apparently no commission would be owed. The Durans negotiated directly with the seller. They signed a real estate purchase contract with Price to purchase one-half acre of his property for $37,000. There were no other parties to the contract. The Durans contend that, in entering into the transaction, they relied on Goodwin's prior representations that the property could be conveyed, that it would serve their purpose, and that it was unencumbered by debt. The Durans did not hire an attorney, legal professional, real estate professional, or title company to assist them with the purchase because they "believed, trusted, and relied" upon Goodwin's false representations, "both express and implied."

The evidence is undisputed that, other than the contact stated above, Goodwin was not involved with encouraging or persuading the Durans to purchase the property, negotiating the transaction, determining the contract price or terms, selecting the form of the contract, preparing the contract document, filling out the form, or presenting the contract to Price, and there is no suggestion that Goodwin received any fee from the transaction. Neither the Durans nor Price was represented by an attorney or by a realtor, agent or broker.

When the Durans decided to purchase the property, they retained the services of Azalea Flores, a notary public who was not a lawyer or realtor. They paid her to draft the purchase contract. She downloaded a contract from the Internet and filled it out for them. Some important contract terms and blanks were left empty or not written to the Durans' benefit. Flores met with the Durans and Price when they signed the contract. At the meeting, the Durans presented Price with

3

a written list of their expenses in connection with the purchase, including the fee to Flores and the cost for them to obtain a survey. The purchasers did not obtain a survey or title policy, although the contract provided for the same. They did not retain the services of a title company, obtain a title commitment, or utilize an escrow agent aside from Price. Ms. Flores stated in her deposition that she advised the Durans to go to a title company to make sure that there were no liens on the property. They did not do so. Instead, the Durans gave Price $10,000 cash and a vehicle valued at $14,000, and commenced making installment payments to Price for the $13,000 balance. Price never executed a deed or any conveyance to the Durans, and a closing date was never set. The purchase contract gave the Durans 720 days to obtain a survey. Price testified that he had conversations with the Durans about subdividing the property and getting a survey, that they knew the property had not yet been subdivided, and that the lengthy period of time was to enable them to survey and subdivide the property, which the Durans deny.

The Durans did some work improving the land, including clearing trees and brush, fencing, and the like. In April, the Durans had a survey done so that they could erect a boundary fence. The record does not reflect how they knew where to place the location of the boundary line. The Durans allege that when they attempted to obtain utility hookups in July, their application was denied. They discovered that the property had never been legally subdivided and, therefore, they could not obtain separate utilities.

The Durans sought help from a real estate attorney to recover their money and vehicle from Price, but their efforts were unsuccessful. Through the attorney, the Durans discovered that Price's property was encumbered by $170,000 in liens.

4

The Durans sued Price and the Goodwin parties under the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA). *See* Tex. Bus. & Com. Code §§ 17.41-.63. The Durans contend that they stood as consumers under the DTPA as to Goodwin as well as to the seller, and that Goodwin's conduct violated the DTPA. The Durans allege that they suffered damages from entering into a transaction with Price in reliance on representations made to them by Goodwin, and that they would not have entered into the contract but for these representations. They also allege that Goodwin committed fraud, because a search of the Travis County real estate database would have revealed to Le that the property was not subdivided and that there were liens against the property, which she failed to disclose. In the alternative, the Durans allege that Goodwin's conduct was negligent, grossly negligent, and reckless and was a proximate cause of their damages.

Goodwin moved for summary judgment on the grounds that (1) Goodwin had no connection to or involvement with the transaction between the Durans and Price; (2) the Durans were not consumers as to Goodwin because they acquired no goods or services from Goodwin; (3) the contract between Price and the Durans, as well as the Durans' other independent acts, superseded any statement or act by Goodwin that preceded the contract; and (4) Goodwin's conduct as a matter of law was not a producing cause or proximate cause of the Durans' damages. Goodwin contends that any economic damage suffered by the Durans occurred solely as a result of their contract and transaction with Price, not because of any act or omission by Goodwin. The trial court rendered summary judgment for Goodwin. This action was severed from the claims against Price to allow the Durans to appeal.

5

## STANDARD OF REVIEW

Whether summary judgment is proper is a question of law that we review de novo. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). A traditional summary judgment is proper if (1) there are no genuine issues of material fact, and (2) the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). Once the movant establishes the right to judgment, the burden shifts to the nonmovant to raise a fact issue that would preclude summary judgment. *Virginia Indonesia Co. v. Harris Cnty. Appraisal Dist.*, 910 S.W.2d 905, 907 (Tex. 1995). A defendant who conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W. 2d 546, 548-49 (Tex. 1985). When the trial court does not state the basis for its ruling, the judgment can be affirmed on any of the movant's theories that have merit, and the appellate court can consider all grounds preserved for appeal. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W. 2d 623, 627 (Tex. 1996).

## DISCUSSION

The Durans alleged that they suffered economic damages as a result of entering into the March 1, 2011, real estate transaction with Price because Price never conveyed to them title to a legal lot free from liens. They place the responsibility for their damages, however, on Goodwin. The Durans rely on the advertising flyer Le posted at the property, Le's telephone representation to

6

Mrs. Duran, the MLS listing for the property, and Goodwin's failure to inform them that the property was not subdivided and was encumbered by liens.

The Durans allege that the statements in the flyer were false misrepresentations designed to induce them to purchase the property. They allege that Goodwin knew that the property had not been legally subdivided and that it was encumbered by liens, but did not tell them. Although Le posted information on the MLS web site that the property had not yet been subdivided, the Durans assert that the area where it was posted is restricted and not available to the general public. They also contend that Goodwin knew about or should have been able to discover the liens against the property and withheld the information from them.

The Durans assert that they were injured by the transaction with Price; that they never would have entered the transaction but for their reliance on the express and implied false misrepresentations of Goodwin; that the misrepresentations and withholding of information were made at a time when Goodwin was acting as Price's agent; and that Goodwin's actions were both a producing cause and a proximate cause of their injuries. Goodwin concedes that the Durans admittedly were consumers as to the seller under the DTPA but argues that the Durans were not consumers under the DTPA as to Goodwin because they neither sought nor acquired goods or services from Goodwin. Primarily, Goodwin argues that the written contract between the Durans and Price superseded any of Goodwin's acts; that Goodwin was not connected to the transaction; and that nothing Goodwin did constituted a cause of the Durans' economic damages. Goodwin also asserts that the Durans relied on their own purchase contract that they prepared, not on the advertising flyer, in pursuing the purchase, and it was the contract that controlled the transaction.

7

Finally, Goodwin contends it was not responsible for the fact that the Durans delivered their money and property to the seller rather than to an independent escrow agent, did not utilize the services and protection of a title company, and did not even take advantage of their rights and protections under the terms of their contract. Goodwin asserts that its actions were not a producing or proximate cause of any damages and, further, that the undisputed facts conclusively establish several intervening new and independent causes of any damages. In short, any damages the Durans suffered resulted solely from their contract and independent actions and not from reliance upon any actions or representations made by Goodwin.

Likewise, Goodwin further asserts that the Durans cannot recover against Goodwin for common law fraud, because it was the real estate contract that they relied upon for the purchase, and Goodwin had no connection with the contract or the purchase. For the same reasons otherwise alleged, Goodwin contends there is no factual support to recover on a claim for negligence, gross negligence, or recklessness. Goodwin argues that the Durans' complaints on appeal challenging the summary judgment all relate to one legal issue: whether Goodwin's conduct was the cause of the Durans' damages.

The DTPA declares it unlawful to commit a false, misleading, or deceptive act or practice in the conduct of any trade or commerce. Tex. Bus. & Com. Code §§ 17.41-.63. "Trade" includes advertising or offering real property for sale. *Id.* § 17.45(6). A consumer may recover economic damages caused by detrimental reliance on one of the false, misleading, or deceptive acts enumerated in section 17.46(a). *Id.* § 17.50(a)(1), (b). "Consumer" is defined as one "who seeks or acquires by purchase or lease, any goods or services." *Id.* § 17.45(4). "Goods" include real

8

property. *Id.* § 17.45(1). "Services" include work, labor, or services furnished in connection with the sale of goods, including real property. *Id.* § 17.45(2). Unlawful conduct includes failing to disclose information concerning goods that was known at the time of the transaction, if the failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. *Id.* § 17.46(24). It also includes representing that goods are of a particular standard, quality, or grade, if they are of another. *Id.* § 17.46(7).

In order to recover under the DTPA, the plaintiff must prove the following elements: (1) the plaintiff is a consumer; (2) the defendant can be sued under the DTPA; (3) the defendant committed a false, misleading, or deceptive act or practice that was relied on by the plaintiff to the plaintiff's detriment; and (4) the defendant's action was a producing cause of the plaintiff's damages. Tex. Bus. & Com. Code §§ 17.41-.63; *Amstadt v. U. S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).

To qualify as a consumer, the Durans must show that it sought or acquired goods or services by purchase or lease, and the goods or services purchased or leased must form the basis of their complaint. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981). The DTPA does not restrict its application to deceptive acts committed by persons who furnish the goods or services on which the complaint is based. *Id.* at 540. Application of the DTPA is not restricted by any privity requirement. *Id*. at 541. A plaintiff establishes standing as a consumer in terms of the plaintiff's relationship to a transaction, not by proving a contractual relationship with the defendant. The DTPA only requires that the goods or services sought or acquired by the consumer form the

9

basis of the complaint. *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex. 1983); *Cameron*, 618 S.W.2d at 541. If, in the context of a transaction in goods or services, any person engages in an unconscionable course of action which adversely affects a consumer, that person may be subject to liability under the Act. There is no requirement that the unconscionable act or conduct occur simultaneously with the sale. *Flenniken*, 661 S.W.2d at 707.

"Producing cause" is defined as

> a substantial factor in bringing about an injury, and without which the injury would not have occurred, [this definition] is easily understood and conveys the essential components of producing cause that (1) the cause must be a substantial cause of the event in issue and (2) it must be a but-for cause, namely one without which the event would not have occurred.

*Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007). Producing cause, like proximate cause, rests on proof of actual causation in fact; cause in fact is an element common to both. *General Motors Corp. v. Saenz*, 873 S.W.2d 353, 357 (Tex. 1993). A producing cause requires that the act be both a cause in fact and a substantial factor in causing the consumer's injuries. *Alexander v. Turtur & Assocs.*, 146 S.W.3d 113, 117 (Tex. 2004); *Brown v. Bank of Galveston*, 963 S.W.2d 511, 514 (Tex. 1998). Thus, to prove the act was a producing cause of injury, a consumer must prove that the defendant's deceptive act or omission (1) was an actual cause in fact of the plaintiff's injury; (2) but for the defendant's conduct, the plaintiff's injury would not have occurred; and (3) the act or omission was such a substantial factor in bringing about the plaintiff's injury that liability should be imposed on the defendant. *Prudential Ins. v. Jefferson Assocs.*, 896 S.W.2d 156, 161 (Tex. 1995); *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex. 1980). There can be more than one producing cause. *Id.* Further, the defendant's deceptive act or

practice must have been committed in connection with the plaintiff's transaction in purchasing goods or services. *Amstadt*, 919 S.W.2d at 650. A plaintiff can show the connection by showing that a representation made by the defendant reached the plaintiff. *See, e.g.*, *Todd v. Perry Homes*, 156 S.W.3d 919, 922 (Tex. App.—Dallas 2005, no pet.). The fact that a consumer's own acts may be a cause of the buyer's damages does not preclude finding that another's act is also a producing cause. *Danny Darby Real Estate, Inc. v. Jacobs*, 760 S.W.2d 711, 716 (Tex. App.—Dallas 1988, writ denied).

Applying these rules of law to the facts of this case, we must determine whether Goodwin proved that Goodwin could not be liable for the Durans' injuries as a matter of law. The Durans were admittedly consumers with respect to their transaction with Price. The Durans may have been damaged as a result of their real estate transaction, and they may have been consumers in their relationship to the transaction. Goodwin, however, had no involvement with this transaction, and the trial court correctly concluded that, under these facts, the Durans were not consumers vis-à-vis Goodwin as a matter of law.

Even assuming the Durans were consumers with respect to Goodwin, however, the Durans were still required to show that the conduct they characterize as Goodwin's deceptive acts and omissions were a producing cause of their damages. They must prove that Goodwin's conduct was connected to the Duran-Price real estate transaction; that Goodwin's conduct was the actual cause in fact of the Durans' injury; that but for Goodwin's conduct their injury would not have occurred; and that Goodwin's act or omission was such a substantial factor in bringing about their injury that liability should be imposed. *See Prudential*, 896 S.W.2d at 161.

11

Goodwin advertised Price's property by listing it on MLS and by posting a sign with written flyers. The Durans obtained the advertising flyer, and Le answered Mrs. Duran's inquiries when she called, possibly twice. The Durans allege that the information in the flyers and given by phone was false and was designed to induce them to purchase the property.

The undisputed evidence shows that the Goodwin listing expired a month before the Durans contracted with Price. Once the listing expired, Goodwin had no more connection with the property, and any connection Goodwin might have had to any subsequent purchase transaction was broken. Goodwin's actions did not lead in a natural sequence to the Durans' contracting directly with Price or to the damages that the Durans incurred as a result. The Durans complain that there was only a short gap in time before they bought the property, but their position necessarily assumes that Goodwin's connection would continue indefinitely and that Goodwin's conduct would have been the cause of their injuries, absent more, regardless of how long they waited to buy.

In their transaction with Price, the Durans clearly did not receive a legal lot free from liens. But Goodwin was omitted from that transaction. Unless there is evidence that Goodwin caused the Durans' damages and that the evidence satisfies the requirement of actual causation in fact, however, they cannot recover against Goodwin on any of their claims.

On their own initiative, the Durans dealt directly with Price. They prepared a contract for Price and signed it, then gave Price property of value, without knowing what specific property they were buying, where its boundaries lay, and without receiving a deed or other confirmation of conveyance. These were the acts that caused their damages. Goodwin's alleged "false advertising" and other representations were not a producing cause or proximate cause of the Durans' damages.

12

The Durans relied on their contract with Price, which they prepared. No action by Goodwin was a substantial factor in causing the Durans' damages and thus was not a producing cause of the Durans' economic damages. As a matter of law, Goodwin's actions were not a substantial factor that caused the Durans' economic damages.

For the same reasons, the Durans could not prevail on their fraud claim or on their allegations of negligence, gross negligence, or reckless conduct.

## CONCLUSION

We overrule the appellants' complaints on appeal and affirm the trial court's judgment.

_____

Marilyn Aboussie, Justice

Before Justices Puryear, Rose, and Aboussie*

Affirmed

Filed: August 29, 2014

\* Before Marilyn Aboussie, Chief Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).

13