

# NUMBER 13-16-00370-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JEFFERY PEACE AND
CAROLINE PEACE,                                                    Appellants,

v.

ITCOA, LLC D/B/A
INDEPENDENCE TITLE COMPANY;
MONA McMAHAN; AND
WM. BRIAN McMAHAN, P.C.,                                           Appellees.

## On appeal from the 261st District Court
## of Travis County, Texas.

# MEMORANDUM OPINION[1]

## Before Justices Rodriguez, Longoria, and Hinojosa

---

[1] This appeal was transferred to this Court from the Third Court of Appeals by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 22.220(a) (West, Westlaw through 2017 1st C.S.) (delineating the jurisdiction of appellate courts); *id.* at §73.001 (West, Westlaw through 2017 1st C.S.) (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

## Memorandum Opinion by Justice Hinojosa

Appellants Jeffery Peace and Caroline Peace, the purchasers of real estate in the City of Westlake Hills, Texas (the City), appeal from a final judgment providing that they take-nothing from appellees Independence Title Company (ITC), Mona McMahan, and Wm. Brian McMahan, P.C. (collectively the McMahans).[2] In two issues, the Peaces complain that the trial court erred in (1) granting the motions for summary judgment, advanced on no-evidence and traditional grounds, filed by ITC and the McMahans; and (2) denying their motion for partial summary judgment. We affirm.

### I. BACKGROUND[3]

The facts of this case are largely undisputed and generally begin with an oral promise to the City by Amy Hovis to donate a fifteen foot right-of-way for expansion of a roadway from property that Hovis later sold to the Peaces for $635,000 and which is the subject of this suit on appeal. The summary-judgment record reveals that the City agreed to partition Hovis's single lot into two lots in exchange for Hovis's donation. The outline of this agreement was written in the minutes of an August 20, 2011 city council meeting. Approximately a month later, the City partitioned the lots by filing a plat

---

[2] After the trial court signed the final judgment and the Peaces filed their notice of appeal, the City filed its own notice of appeal. It has since filed with us a motion for voluntary dismissal. *See* TEX. R. APP. P. 42.1(a), (b). We grant the City's motion for voluntary dismissal and dismiss it from this appeal. Additionally, Alan Bojorquez, David Claunch, and Robert Wood, while listed on the style of the final judgment and notices of appeal and in the style of this case in this Court, are not parties to this appeal. Accordingly, we remove the City, Bojorquez, Claunch, and Wood from the style of this case. Lastly, the Peaces' brief fails to assail the take nothing relief awarded in Chicago Title Insurance Company's favor; accordingly, we remove it from the style of this case.

[3] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

vacation with the Travis County Clerk. The partition created two parcels of land that face opposite roads—101 McConnell Drive and 102 Westhaven Drive. A drawing of the property provided by the Peaces' in their summary-judgment response depicts the following:



Hovis never reduced her oral donation offer to writing. Instead, Hovis entered an agreement to sell the property to the Peaces for $635,000, without first transferring the right-of-way.

According to the summary-judgment evidence, Hovis, ITC, and the McMahans did not inform the Peaces of the right-of-way agreement before they closed on the property. Nevertheless, during the purchase-option period, the Peaces were made aware of the possibility of a roadway expansion. On October 19, 2011, Hovis's real estate agent

3

forwarded to the Peaces an email message from Jean Goehring, Hovis's husband, which stated:

> I know that title and survey review period begins today, and I wanted to pass [on] a drawing that I prepared to illustrate for Jeff and Carrie [Peace] a proposed right of way for 101 McConnell in the event of a possible expansion of Bee Cave. The expansion of Cave Rd. has been discussed for the past 15 or so years and would require the acquisition of right of way for the entire length of Bee Cave Rd.—including the dozens of commercial owners. This was discussed when we acquired 101 Westhaven and 102 Westhaven and when Chris and Gerri bought 100 Westhaven. Any expansion would also require the consent of the other 3 residential property owners adjacent to 101 and all have said no. No building setbacks would be affected and we are really talking about a few feet inside the steel fence that is currently there. If Jeff has any questions, please have him call me at the number below . . . .
>
> As you know, I'm currently on City Council and can share any past or present info on this . . . .

The uncontroverted summary-judgment evidence revealed that the day before closing, Hovis's real estate agent again informed the Peaces of the possible roadway expansion, directly writing to them:

> Congrats on your imminent two closings tomorrow. I left you a voicemail today Jeff [Peace] regarding this "right of way" outlined in the email sent 10/19 on the McConnell lot. (see attached survey)
>
> Apparently, it's not in writing anywhere (nor recorded) with the city of Westlake (the red lines drawn on survey.) There may be a time they attempt to put it in writing with you the new owner, but don't know when or if that will ever happen.
>
> Could be to your advantage, but nonetheless wanted you to know.
>
> Amy signed her paperwork today, so it'll just be a matter of funding tomorrow.
>
> Look forward to seeing you both once you're down here. Call at anytime if you need me.

4

After the sale, according to the summary-judgment evidence, the City sought to have the Peaces effectuate Hovis's oral promise; the Peaces declined the City's request. On October 23, 2012, the City's mayor wrote to the Peaces, recounting the following:

> Please sign the enclosed Right of Way Warranty, have them notarized, and return them to City Planner Davin Fillpot at City Hall at 911 Westlake Drive. (The City offers Notary services for free at City Hall)
>
> If we have not received the signed and notarized documents by November 6, 2012, the City will take the necessary steps to undo the plat vacation that was approved on August 10, 2011. That will result in 102 Westhaven Drive and 101 McConnell Drive once again being combined into a single, legal lot.

The attached right-of-way warranty provided for a thirty-foot right-of-way rather than the fifteen feet Hovis had orally promised. According to the summary-judgment affidavit testimony from Caroline Peace, in 2013 the Peaces conducted several meetings to negotiate an agreement with various stakeholders, including Hovis, the City's mayor, the City's administrator, and city council members. No compromise was reached. On June 26, 2013, the City stamped "VOID" on the previously-filed plat vacation, attached it to an affidavit by the City secretary, and recorded the affidavit together with the voided plat vacation with the Travis County Clerk.

The Peaces sued, among others, ITC and the McMahans for common law fraud, fraud by nondisclosure, conspiracy to commit fraud, negligent misrepresentation, breach of fiduciary duty, and violations of the Texas Deceptive Trade Practices Act (DTPA). Approximately a year after the Peaces filed suit, the City instituted condemnation proceedings in the probate court to obtain the land it deemed necessary for the roadway expansion. Later in the same proceeding against ITC and the McMahans, the Peaces

5

asserted an inverse-condemnation claim against the City, contending that the filing of the June 26, 2013 affidavit and voided plat vacation constituted a taking of property without adequate compensation.

ITC and the McMahans sought summary judgment on no-evidence and traditional grounds on the contention that their failure to disclose Hovis's oral promise did not cause the damages for which the Peaces sought recovery. The Peaces sought summary judgment on traditional grounds on their breach of fiduciary duty claim.

The trial court granted ITC and the McMahans interlocutory summary judgments on all claims brought by the Peaces, and it denied the Peaces' motion for summary judgment on their claim for breach of fiduciary duty. The Peaces inverse-condemnation claim against the City was then tried to a jury, which awarded $297,000. The trial court signed a final judgment that incorporates the summary judgment orders, provides that the Peaces take nothing from ITC and the McMahans, and awards the Peaces inverse-condemnation damages in accordance with the jury's verdict. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

A motion for summary judgment may be brought on no-evidence or traditional grounds. *See* TEX. R. CIV. P. 166a(c), (i). A motion for no-evidence summary judgment is equivalent to a motion for pretrial directed verdict, and we apply the same legal sufficiency standard of review. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 772 (Tex. App.—Corpus Christi 2003, no pet.) (op. on reh'g). Such a motion should be granted if there is no evidence of at

6

least one essential element of the claimant's cause of action. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). The burden of producing evidence is entirely on the non-movant; the movant has no burden to attach any evidence to the motion, and if the non-movant produces evidence raising a genuine issue of material fact, summary judgment is improper. TEX. R. CIV. P. 166a(i). All that is required of the non-movant is to produce a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003); *Ortega*, 97 S.W.3d at 772.

"Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion of a fact.'" *Ortega*, 97 S.W.3d at 772 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)); *see Forbes*, 124 S.W.3d at 172. Conversely, more than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *Forbes*, 124 S.W.3d at 172; *Ortega*, 97 S.W.3d at 772 (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)). In determining whether the non-movant has produced more than a scintilla of evidence, we review the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Tamez*, 206 S.W.3d at 582; *City of Keller v. Wilson*, 168 S.W.3d 802, 825, 827 (Tex. 2005).

We review the trial court's granting of a traditional motion for summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.—Corpus Christi 2003, no pet.).

7

When reviewing a traditional summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). The movant bears the burden of proof, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Sw. Elec. Power Co.*, 73 S.W.3d at 215. We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

When granting a "hybrid" summary judgment motion—a no-evidence and traditional summary judgment motion—we first employ the no-evidence summary judgment standard of review. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If summary judgment was not proper on no-evidence grounds, we then employ the traditional summary judgment standard of review. *See id.* We will affirm a summary judgment "if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 157 (Tex. 2004).

## B.    Applicable Law

The parties concede, and we agree, that causation is a common element in all six of the claims asserted by the Peaces. The parties further concede, and we agree, that the Peaces' claims will depend on whether wrongful acts by ITC and the McMahans "proximately caused" damages to the Peaces, whereas the Peaces' DTPA claim

8

implicates the distinct concept of "producing cause," as discussed below.[4]

Proximate cause has two components: (1) foreseeability and (2) cause-in-fact. *Rodriguez–Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013); *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010). For a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm, and absent the act or omission—i.e., but for the act or omission—the harm would not have occurred. *Rodriguez–Escobar*, 392 S.W.3d at 113. There may be more than one proximate cause of an occurrence. *Del Lago Partners*, 307 S.W.3d at 774.

The Texas Supreme Court defined "producing cause" with respect to DTPA actions as:

> a substantial factor in bringing about an injury, and without which the injury would not have occurred, [this definition] is easily understood and conveys the essential components of producing cause that (1) the cause must be a substantial cause of the event in issue and (2) it must be a but-for cause, namely one without which the event would not have occurred.

*Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007). Producing cause, like proximate cause, rests on proof of actual causation in fact; cause-in-fact is an element common to both. *General Motors Corp. v. Saenz*, 873 S.W.2d 353, 357 (Tex. 1993).

---

[4] *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (breach of fiduciary duty elements); *Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001) (fraud by nondisclosure elements); *In re First Merit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (common-law fraud elements); *Operation Rescue–Nat'l v. Planned Parenthood*, 975 S.W.2d 546, 553 (Tex. 1998) (conspiracy to commit fraud elements); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996) (DTPA claim elements); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (DTPA claim elements); *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (negligent misrepresentation elements); *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App.—Dallas 2013, pet. denied) (fraud by nondisclosure elements); *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 55 (Tex. App.—Fort Worth 2002, no pet.) (conspiracy to commit fraud elements).

A producing cause requires that the act be both a cause-in-fact and a substantial factor in causing the consumer's injuries. *Alexander v. Turtur & Assocs.*, 146 S.W.3d 113, 117 (Tex. 2004); *Brown v. Bank of Galveston*, 963 S.W.2d 511, 514 (Tex. 1998). Thus, to prove the act was a producing cause of injury, a consumer must prove that the defendant's deceptive act or omission (1) was an actual cause-in-fact of the plaintiff's injury; (2) but for the defendant's conduct, the plaintiff's injury would not have occurred; and (3) the act or omission was such a substantial factor in bringing about the plaintiff's injury that liability should be imposed on the defendant. *Prudential Ins. v. Jefferson Assocs.*, 896 S.W.2d 156, 161 (Tex. 1995); *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex. 1980). There can be more than one producing cause. *See Ledesma*, 242 S.W.3d at 45. Further, the defendant's deceptive act or practice must have been committed in connection with the plaintiff's transaction in purchasing goods or services. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 650 (Tex. 1996). A plaintiff can show the connection by showing that a representation made by the defendant reached the plaintiff. *See, e.g., Todd v. Perry Homes*, 156 S.W.3d 919, 922 (Tex. App.—Dallas 2005, no pet.). The fact that a consumer's own acts may be a cause of the buyer's damages does not preclude finding that another's act is also a producing cause. *Danny Darby Real Estate, Inc. v. Jacobs*, 760 S.W.2d 711, 716 (Tex. App.—Dallas 1988, writ denied).

Furthermore, a plaintiff asserting a DTPA claim does not have to meet the higher standard of proximate causation, which includes foreseeability as an element; rather, "only [a] producing cause must be shown." *Prudential Ins.*, 896 S.W.2d at 161; *see*

*Bryant v. S.A.S.*, 416 S.W.3d 52, 65 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

## C.    Issue 1:    Causation of Damages

The thrust of ITC and the McMahans' no-evidence summary judgment motions is that "the cause of any damages to [the Peaces] is the subsequent governmental taking and condemnation of part of their" property for the roadway expansion, and not any action taken or omission made by ITC or the McMahans.

In the Peaces' response to the summary judgment motions, they asserted that they were entitled to direct economic damages as a result of their "fraudulent inducement/misrepresentation cases." According to the Peaces, these direct economic damages are measured in "out-of-pocket" and "benefit-of-the-bargain" terms. The Peaces also asserted entitlement to consequential damages. Because ITC and the McMahans do not quarrel with these damage measures, we assume, without deciding, that they apply.

Nevertheless, the Peaces' responsive arguments and evidence do not squarely align with the thrust of ITC and the McMahans' no-evidence summary judgment ground. As for the element of causation, the Peaces argue that: (1) "[n]othing in the condemnation suit will remove the [June 26, 2013 affidavit and voided plat vacation] from the public records"; (2) even if the condemnation suit ended immediately,[5] they would still not know the correct legal description of their property; and (3) they would still be fighting with the City to clean up "the legal mess" that ITC and the McMahans sold them. The Peaces also argue that the condemnation argument was not ripe because the City did

---

[5] At the time the summary-judgment motions were considered, the Peaces' inverse-condemnation claim was still pending.

11

not institute the condemnation action until a year after the Peaces filed suit. As for the summary-judgment evidence regarding causation, the Peaces rely soley on deposition and affidavit testimony in which they steadfastly asserted that they would not have purchased the property had they known of Hovis's oral promise.[6]

The Peaces responsive legal argument focuses on blemishes on their chain of title while their attempt to create a fact dispute centers on their ultimate decision to purchase the property. But neither negates the effect of the City's condemnation action. Nonetheless, even assuming without deciding that the trial court erred in granting summary judgment on no-evidence grounds,[7] we find no error in the granting of summary judgment on ITC and the McMahans' condemnation contention on traditional grounds.

The final judgment in this case goes a long way toward disposing of the Peaces' responsive arguments. One of the judgment's paragraphs provides:

> 11. On April 4, 2016, the parties proceeded to trial on a single question regarding the amount of [the Peaces'] damages, if any, for the taking. On April 6, 2016, the question was submitted to the jury, which returned a verdict in favor of [the Peaces] in the amount of $297,000.00. Having been awarded compensation for the taking under the Texas constitution, [the Peaces'] federal takings claim under 42 U.S.C. § 1983 is moot. *See, e.g., Town of Flower Mound v. Stafford Estates*, 71 S.W.3d 18, 48-49 (Tex. App.—Fort Worth 2002), aff'd 135 S.W.3d 620 (Tex. 2004).

The Peaces take no issue with this paragraph, which resolves half of the Peaces' concern

---

[6] We note that neither the Peaces' original petition nor their live petition before the summary-judgment motions were considered sought rescission.

[7] In the Peaces' reply brief, they complain that ITC and the McMahans' condemnation argument should be characterized as an inferential rebuttal, and ITC and the McMahans could not obtain a no-evidence summary judgment on it. The Peaces also contend that ITC and the McMahans did not present the condemnation argument to the trial court; our reading of the record, as noted above, reveals otherwise. However, we assume, without deciding, that that ITC and the McMahans could not have obtained summary judgment on the condemnation argument on no-evidence grounds.

regarding the clarity of the legal description of their property. The other half is resolved when we look to the City's condemnation action, which the Peaces reference by style and cause number in their summary-judgment response. In that action, the City attached to its petition a metes and bounds description of the land it sought to condemn.[8] Thus, on this record, the Peaces' concern about the correct legal description of their property—their only legal contention that ITC and McMahans caused them damages—has been answered.

The Peaces' ripeness argument is equally unpersuasive because their concern regarding the clarity of title was ephemeral. While true that the City did not institute the condemnation proceeding until after the Peaces filed suit, its legal authority to do so existed throughout the relevant period. This point brings us back to the cause-in-fact element that pierces through the definitions of proximate cause and producing cause. *See Rodriguez–Escobar*, 392 S.W.3d at 113 (providing that for a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm, and absent the act or omission—i.e., but for the act or omission—the harm would not have occurred); *see also Prudential Ins.*, 896 S.W.2d at 161 (providing that to prove the act was a producing cause of injury, a consumer must prove that the defendant's deceptive act or omission (1) was an actual cause-in-fact of the plaintiff's injury; (2) but for the defendant's conduct, the plaintiff's injury would not have occurred; and (3) the act or omission was such a substantial factor in bringing about the plaintiff's injury that liability should be imposed on the defendant).

---

[8] A copy of the City's petition and the attached property description were filed by the City in support of a summary judgment motion that is not at issue in this appeal.

Even if Hovis's oral promise enticed the City and ITC and the McMahans were derelict in not relating Hovis's oral promise to the Peaces, the City possessed eminent domain power at all relevant times. That the City employed its eminent domain power only confirms that its will to acquire the land for a roadway expansion persisted after Hovis failed to fulfill her end of the bargain and was the but-for cause of the land taking that the Peaces resisted. *See Rodriguez–Escobar*, 392 S.W.3d at 113; *Prudential Ins.*, 896 S.W.2d at 161.

So even assuming the trial court erred if it granted a no-evidence summary judgment against the Peaces, we conclude that the trial court did not err in granting a traditional summary judgment on the ground that ITC and the McMahans' failure to disclose Hovis's oral promise did not cause the Peaces the damages that they sought through the six claims asserted. Accordingly, the Peaces' first issue is overruled.

**D.    Issue 2:   Breach of Fiduciary Duty**

In the Peaces second issue, they complain that the trial court erroneously denied their motion for summary judgment on traditional grounds regarding their breach of fiduciary duty claim. In their brief before us, the Peaces enumerate the elements of a breach of fiduciary duty claim; and for the causation element, they refer us to their briefing of causation regarding their first issue. In other words, the Peaces hinge the success of their second issue, in part, on their first issue. Having overruled the Peaces' first issue, their second issue necessarily fails. Accordingly, we overrule the Peaces' second issue.

### III. CONCLUSION

The judgment of the trial court is affirmed.[9]

LETICIA HINOJOSA
Justice

Delivered and filed the
5th day of April, 2018.

---

[9] The McMahans' motion to dismiss this appeal for lack of jurisdiction, which we carried with the case, is denied.